## PROOF OF GUILT BY CIRCUMSTANTIAL EVIDENCE.

Court of Appeals for Hamilton County.

THOMAS J. CARTER v. STATE OF OHIO.

Decided, February 5, 1915.

*Criminal Law—Proof of Arson by Circumstantial Evidence—Character of Instruction to Jury Required Where Conviction is Asked on Circumstantial Evidence—Error in Permitting Witnesses to Give Their Own Conclusions Based on Facts Which They Have Related.*

1. Where reliance for conviction is placed on circumstantial evidence, the jury should be instructed that the facts and circumstances upon which the theory of guilt is based should be shown beyond a reasonable doubt, and when taken together must be so convincing as to be irreconcilable with the claim of innocence and admit of no other hypothesis than the guilt of the accused.

2. Where, in an arson case, the cause or origin of the fire is the subject of inquiry, it is prejudicial error to permit witnesses to state the conclusions they have reached from things they have seen and the facts they have related, but the witnesses having related the facts the jury should be left to draw their own conclusions.

*Thorne Baker,* for plaintiff in error.

*Thomas L. Pogue* and *Simon Ross,* Prosecuting Attorneys, contra.

JONES (E. H.), J.; SWING, J., and JONES (Oliver B.), J., concur.

Thomas J. Carter was found guilty of arson and sentenced to the penitentiary. The building burned was located at the southwest corner of Pearl and Sycamore streets in the city of Cincinnati. At the time of the fire it was occupied and used by Carter as a drugstore, he having bought a stock of goods located in said building some time prior to the fire.

Carter was convicted entirely upon circumstantial evidence. The state relied for conviction upon a number of alleged suspicious circumstances. In a general way these suspicious facts

and circumstances might be classified as, first, the conduct of Carter before and after the fire; and, second, the place where it was claimed by the state the fire originated.

The record is a voluminous one; the briefs are correspondingly lengthy, and the case was orally argued at some length. In our consideration of the errors assigned we have eliminated all but two, and these have received at the hands of the court much consideration.

The first of these is based upon the omission of the court to charge the jury correctly and fully upon "circumstantial evidence." All that the court in its charge said to the jury upon this subject is found on pages 601 and 602 of the record, as follows:

"The evidence in this case has largely been what is called circumstantial evidence. There are certain crimes which are committed at such times and places and in such manner that it it is difficult to get direct testimony showing the actual commission of the offense. There is no evidence in this case to show that this defendant actually set fire to this stock of goods, by any direct evidence. If such a thing happened, the only person who would know of that and be able to testify directly, would be the accused person himself. And, as I have said before, in regard to malice, this is an action which involves the consideration of the things that the accused person may, or may not, have had in mind; and the law permits us to go outside of direct evidence to establish such fact and to make your inquiry upon the circumstantial evidence that has been presented to you. Circumstantial evidence may, or may not, be as good, or even better, than direct evidence, in some cases. It is a class of evidence which is based upon certain acts, certain things done and said, certain surroundings and conditions and circumstances which would, when carefully weighed by you, enable you to determine upon the guilt or innocence of the accused."

When a conviction is sought in a criminal case upon evidence of facts and circumstances connected with the alleged crime, it will not be denied, we take it, that the accused is entitled to an instruction as to the effect of such evidence and the degree of proof required as to the facts relied upon.

This principle was recognized by the trial court in this case when he used the language, above quoted, in attempting to explain to the jury the probative value of such evidence. But a careful reading of the portion of the charge quoted has failed to satisfy the court that any real instruction such as is contemplated by law and universally recognized as necessary by courts was received by the jury in this case.

From the authorities cited in the brief of counsel for plaintiff in error and others the rule appears to be well established that it is the duty of the trial court to charge the jury that the particular facts and circumstances relied upon to establish guilt must be proved beyond a reasonable doubt; also, that when taken together they must be so convincing as to be irreconcilable with the innocence of the accused or, as said by some authorities as to admit of no other hypothesis than the guilt of the accused.

The charges given to the juries in the cases of *State* v. *Knapp,* 50 Bulletin, 28, and *State* v. *Mueller,* 54 Bulletin, 94, contain instructions upon this subject which have been approved by our Supreme Court. In the former case the court closed the portion of the charge relating to circumstantial evidence, with the following language:

"Where the circumstances are irreconcilable upon the theory of the accused's innocence the jury are bound to so treat them. It is only when the facts and circumstances are irreconcilable with his innocence that he can be convicted.

"To convict in a criminal case upon circumstantial evidence, each of the several circumstances relied upon and necessary to prove any essential element of the crime must be established by the evidence beyond reasonable doubt. Each link essential to the chain must be thus proven."

We do not want to be understood as saying that it is necessary to use the language above quoted or any particular words, to express the rule governing such cases, but only to say that it is necessary in such cases as this that such instruction be clearly given. It is not claimed that the language used by the trial court in the case at bar can be given any such import. We are

of the opinion that this requirement has not been met at all, and that the charge given can not be said to comply with this requirement, any more than if nothing had been said upon the subject. See, also, upon this point: *Brickwood-Sackett Instructions,* Vol. 2, p. 1609.

The second and last error which we have found, and desire to briefly comment upon relates to the admission of evidence. The error occurred in the examination of the witnesses Conway, Flannagan, and McGinn, who appear as witnesses for the state.

The former (Captain Conway) is and has been for eighteen years superintendent of the salvage corps, and prior to that time was for nine years in the fire department. He testified that he had attended probably eight hundred fires a year. On page 32 of the record we find the following:

"Q. From your examination of that building can you now recall and tell the court and jury how many places—at how many places the fire had originated? (Objected to by counsel for defendant. Objection overruled. Exception noted by counsel for defendant.)

"A. Will you let me describe the location as to where the fire, in my opinion, originated?

"Q. That is what I want. A. This cellar under this building runs the full length of the building fronting on Sycamore street; that is the frontaage on Sycamore street the cellar runs that full length, then it runs back in an L a little further in the rear than on the frontage on Pearl street. Now on the north side of the L, which would be the Pearl street side, there was stored a lot of boxes with empty bottles; these bottles, lots of them were in original cartons to prevent them from breaking and they were stacked on top of another along this wall. After going carefully into that thing, and going back to it in different parts of the building the way these boxes were placed, it was evident to me that there was where the fire started on top of them boxes. (Objected to by counsel for defendant.)

"The Court: He is expressing an opinion as an expert. (Objection overruled; exception noted by counsel for defendant.)

"The Witness: After my examination there it was apparent to me that the fire did start in more than one place. (Objected to by counsel for defendant; objection overruled; exception noted by counsel for defendant.)

"A.   And that was due to the way that where the fire, in my
opinion, started in the different places, that it had started down
deep into these boxes, and then burned from there up to the
building, and when I came to that conclusion, after my exam-
ination, is when I notified the other officers.

"(Counsel for defendant moves the court to strike out an-
swer; motion overruled; exception noted by counsel for defend-
ant.)"

On pages 50 and 51 is found the evidence of Mr. Flannagan,
who testified that he is a captain in the Cincinnati fire depart-
ment and has been such for thirteen years; that he had been in
the fire department for twenty-two years and had attended from
one hundred and forty-four to one hundred and seventy fires
a year.   The record shows that the following took place while
he was upon the stand:

"By Mr. Prather:
"Q.   That fire you found behind the prescription counter—
where did it come from?   A. It looked to me like it started in
the cellar and back through the floor.

"Mr. Baker: I move it go out.
"Motion overruled; exception noted by counsel for defend-
ant."

On page 51:

"Q.   How was the floor burned on top and below?   A. Well,
the floor was burned on top all around.

"Q.   The floor that wasn't burned through, was it scorched
on top or scorched underneath?   A. Underneath.

"Q.   What would that indicate as to where the fire started?
(Objected to by counsel for defendant; objection overruled; ex-
ception noted by counsel for defendant.)

"A.   Well—
"Q.   What, if anything, would that indicate?   A. Well, I
think that would indicate that the fire started in the cellar,
where it first started."

And in the testimony of Mr. McGinn, who testified he was
assistant state fire marshal, on page 354 of the record we find
the following:

"Q. Go ahead and describe the conditions as near as you
can that you discovered there in the cellar and in the store
room at that time.    A. Well, in the cellar the joists, and there
was some posts leading up that were burned very bad, this
high from the ground (indicating) showing that the fire must
have started from some place above the ground.  And from all
indications, we could not find anything combustible— (Objec-
tion by counsel for defendant to this class of examination.)"

The point urged by counsel for plaintiff in error with refer-
ence to the testimony above quoted is that the court erred in
permitting these witnesses to state their conclusions of fact
drawn from what they had seen.  The first witness, Conway,
was not present at the fire at all, and testifies that when he
reached the premises the following day the fire was extinct.  He
was permitted to give his conclusions of fact as to the origin of
the fire, upon the theory that he had qualified as an expert
upon this subject.  We think he should have been permitted
to testify only as to what he saw, and the province of the jury
was to draw conclusions from those facts.

The theory of the state, throughout the trial, was that Carter
had arranged combustible material in the basement or cellar,
and had started a slow fire some hours before the fire broke
out and the alarm was given.  The effort of the state was to
prove to the jury this fact.  It did not involve any question of
science or art, and does not as we believe fall under any of the
exceptions to the rule admitting expert testimony only in cases
where questions scientific or artistic in their nature are involved.

Of course this error was prejudicial to the plaintiff in
error.  His right to have his guilt or innocence passed upon
by a jury is guaranteed to him by the Constitution, and we think
the evidence erroneously admitted deprived him of this right;
and that the court by admitting this evidence gave the jury to
understand that the conclusions reached by these witnesses
were binding on them, or at least such inference would naturally
be drawn by the jury from the action of the court in admitting
such evidence against the strenuous objection of counsel repre-
senting Carter.

Upon the question of the inadmissibility of this evidence we cite *Kohn* v. *State of Ohio,* 12 C.C.(N.S.), 197:.

"It is also prejudicial error to admit a statement of a conclusion by a witness who has stated no facts from which the conclusion can be drawn, and as to which the jury are quite as competent as the witness to draw a conclusion."

This is a quotation from the syllabus in an arson case.

In *Canfield* v. *Southern Film Exchange,* 14 C.C.(N.S.), 143, the syllabus reads as follows:

"It was a prejudicial error to overrule objections to questions and answers in this case which involved the very issue to be determined by the jury as to whether the destruction of the property in suit was due to the negligence of the defendant, and constituted the only evidence upon which a verdict for the plaintiff could be based."

For the reasons given, the judgment below will be reversed, and the cause remanded to the court of common pleas for a new trial.