## IN RE BOSTWICK, JUDGE

Ohio Appeals, 2nd Dist, Franklin Co

No 2131. Decided Nov 28, 1931

260

Messrs. C. M. Addison and John E. Todd, Columbus, for plaintiff in error.

Messrs. Newton D. Baker, Cleveland, and Charles S. Druggan, Columbus, for defendants in error.

BY THE COURT

1. The statute under which the proceeding was brought violates no provision of the State Constitution. On the contrary its provisions are in indirect response to the mandate imposed by §6, **Article IV,** of the amendments of 1912. That amendment imposed upon the legislature the duty of passing laws for the prompt removal of public officers for misconduct involving moral turptitude or for such other causes as the legislature might prescribe. The constitutional provision does not require that the moral turpitude for such removal to be had shall be evidenced by an official act. The character of the officers and not the time or place or circumstances of its exhibition lays the groundwork for removal. It is not apparent how the statute does or could offend against any provision of the Federal Constitution.

2. The allegations of fact in the complaint required no verification. The statutes under consideration created a special proceeding, and while the legislature might have made such proceeding subject to the code of civil procedure it did not do so and did not need to do so. Special proceedings sometimes even require no pleading at all, Stewart v. Logan County, 2 C. C. 134, even in quasi criminal proceedings, **Wadsworth** v. **Parsons, 6 Ohio 449,** Steube v. State, 3 C. C. 383. In the case at bar a complaint was required but not a verified complaint. Graham v. Stein, 18 C. C. 770. If a verification had been deemed desirable it would have been expressed as in those other special proceedings created by §12110 and 1647 and similar sections of the **GC.**

3. To invoke the jurisditcion of the court there were required the signatures of a thousand petitioners, electors of the county. It is not claimed that the requisite number did not sign this complaint but it is argued that while the required number apparently did sign they did not on the hearing prove their several qualifications to sign. The respondent did not move to dismiss the proceeding on the ground suggested, evidently for the reason that the burden would have been upon him to sustain his motion. He was satisfied to file an unauthorized answer in equivocal language, which he asserted raised an issue of fact on the qualifications of the complainants requiring proof thereof by the complainants. This is unsound. The gist of the proceeding is not how many complainants there are but the truth or falsity of the charges. A complaint with more than the number of required signatures, sponsored by members of the bar, with nothing to reflect on the genuineness of the signatures or the good faith or competency of the signers, is presumably what it appears to be. If in fact enough of the signatures to reduce the whole to less than one thousand are fictitious or if the body of signatures is so saturated with forgery as to constitute a

fraud upon the jurisdiction of the court it is incumbent on the assailant of that jurisdiction to plead and prove such facts.

4. We have no disposition to review the facts upon which the trial court found the respondent guilty of gross immorality. Nor do we propose to attempt a definition of that term. This court has heretofore expressed its inability to lay down a satisfactory definition. **Seitz v State Medical Board, 24 Oh Ap 154.** In that opinion it was said:

"In West Virginia the Court of Appeals says that gross immorality must be determined according to the common understanding of the ordinary law-abiding and reasonable citizens of the country; that the term implies a wilful, flagrant or shameful course of conduct showing immoral indifference to the opinions of the good and respectable members of the community and to the just obligations of the position held by the delinquent. Moore v. Strickling, 46 W. Va. 515, 33 S. E. 274; 50 L. R. A. 279."

We applied this principle in the Seitz case and follow it now in holding that the undisputed facts in this case show gross immorality. In this paragraph we have reference only to the conduct of the respondent with the woman in the case without reference to the facts in the paragraph following.

5. Much evidence was introduced bearing upon the efforts of the respondent and others to secure from a woman a ring which appears theretofore to have been given to her by the respondent. The tendency of this testimony was to show that repossession of the ring was sought by intimidation. If this theory of the case were sustained it would show an additional act of gross immorality and also misconduct in office as, if true, it showed that clerks in the Probate Court were used for this unlawful purpose. Evidence of the acts and declarations of the several actors in this movement were mere hearsay as against the respondent unless such actors were in conspiracy to effect this unlawful purpose. The evidence tended to show that the attempt to repossess the ring was initiated by the respondent and culminated in his repossession of it. The record is clear that the respondent knew that the woman was in the custody of a deputy sheriff immediately prior to the ring being restored to him. From this and other circumstances a deduction that he was a party to all that was done towards the recovery of the ring might be drawn. Certainly with a number of circumstances pointing towards

the respondent's knowledge of what was being done an inference that he was a party to the conspiracy was permissible in view of the fact that he might have but did not deny such knowledge.

The triers of fact were under the circumstances warranted in concluding that a conspiracy did exist and that the respondent was a party thereto. This being so they had a right to weigh the acts and declarations of all the parties to the conspiracy. The motion to exclude this character of testimony as hearsay was consequently properly overruled.

6. The further claim that the evidence referred to in the preceding paragraph, even if admissible as against the hearsay rule, ought nevertheless have been excluded in large part because it involved priviledged communications made to an assistant prosecuting attorney is unsound. Certainly that view is not sustained by anything said in **Taplin v. Hower** and **Stephenson v. McCurdy,** recently decided by the Ohio Supreme Court, or in Vogel v. Grauz, 110 U. S. 311. Whatever may be the privileged nature of communications made in good faith to a prosecuting attorney with a view of instituting criminal proceedings how the question of such privilege must be raised and by whom are questions into which we need not enter. The testimony of the lawyer who approached the assistant prosecuting attorney clearly shows that he was not seeking to institute a legitimate prosecution but that he was solely interested in using the prosecuting attorney to recover personal property for his friend, and all of the circumstances without a single exception corroborates that witness in that respect.

The Supreme Court of Kansas has been vigilant in its support of the privilege to be accorded communications made to a prosecuting attorney in a proper proceeding, Michael v. Matson, 81 Kan. 360, L. R. A. 1915D 1, following Vogel v. Grauz, supra. When, however, the Supreme Court of that state had to do with communications made to a prosecuting officer for evil purposes it held that such communications lost their privileged character. The reason was that the rule of privilege rests upon public policy, and that public policy did not justify the claim of privilege where the purpose to be served by the communication was an improper one. Sate v. Wilcox, 90 Kan. 80, 9 A. L. R. 1091.

There was no error in overruling the claim of privilege in the case at bar.

Other matters discussed in the brief and in argument do not seem to require com-

ment. The record is free from prejudicial error.

The judgment is affirmed.

MAUCK, PJ, MIDDLETON and BLOSSER, JJ, concur.