## STATE v HARWOOD

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16085. Decided Dec 20, 1937

Frank T. Cullitan, County Prosecutor, Cleveland, Charles J. McNamee, First Asst. Chief Pros., Cleveland, Neil W. McGill, Asst. Pros., Cleveland, for plaintiff-appellee.

James Murray, Cleveland, J. C. Connell, Cleveland, for defendant-appellant.

MONTGOMERY, PJ, SHERICK and LEMERT, JJ, (5th Dist) sitting by designation.

## OPINION

By SHERICK, J.

An indictment containing seven counts was returned against the accused, all of which charged him with the crime of brib-

ery under §12823 GC. Upon trial he was found guilty as charged upon the first six counts, and not guilty upon the seventh or Filipie episode. Judgment having been entered on the verdict and sentence pronounced, the defendant appeals to this court on questions of law. Eight grounds of claimed error are relied upon for reversal.

In approaching the first claimed error in that the verdict is not sustained by sufficient evidence, we are admonished by the prosecution, upon the authority of Breese v State, 12 Oh St 148, and Staccuto v State, 118 Oh St 397, that it is this court's duty not to disturb this verdict and judgment unless the evidence is clearly and manifestly contrary thereto. Since the adjudication of Cooper v State, 121 Oh St 562, however, this is not the rule for our guidance. We shall, therefore, proceed to weigh and consider all of the evidence in a severer fashion; that is to say, does the evidence in the record before us support the verdict appealed from by that degree of proof which the character of the case requires? Without embarrassment of the suspicion sometimes entertained, we state that we have read all of the voluminous record before us. The error claimed and the seriousness of the conviction to the defendant and importance to the state made such imperative. We are unable to encompass within this instrument, a review of the bill's content, and must content ourselves with a summary of our impressions gained therefrom.

The gravamen of the crime of bribery lays in the despicable act of unlawfully and corruptly soliciting and accepting sums of money or things of value to influence an official's acts with respect to his official duty. In this case the delinquency lays in the failure to enforce the prohibition law when immunity is bought and paid for. The evidence clearly established that Captain Harwood, along with Captain Van Norman were in command of the 14th and 15th precincts during that portion of the years of 1928 and 1929 covered by the indictment; that five prosecuting witnesses testify that during this period Harwood solicited and accepted the sums paid by them for protection from molestation; that while Harwood was a captain in charge and his demands were paid they were not disturbed in this unlawful business by precinct squads; that when payments ceased, local raids began and arrests followed. In other words, protection ceased when payments stopped.

We find from the record that three other confessed bootleggers testify as to contemporaneous or subsequent similar acts of bribery. The appellant is found denying these claimed solicitations and acceptances of money. Numerically the record stands five or eight to one. If the problem is to be solved by numerical balancing as it is not, the defendant must lose. But the fact is, however, that the quantum of proof on the two indispensable elements of the crime of bribery preponderates in the state's favor.

The real point upon which the sufficiency or insufficiency of the evidence rests is the matter of credibility; that is, the probability of the truth of the witnesses' respective related stories. Upon this matter we will have occasion for further discourse.

In the trial of all jury cases, it is always charged that the question of credibility of witnesses is one of fact exclusively within the jury's province. That is to say, the trial court may not invade this field even though it hears and sees the witnesses testify. From this settled rule there naturally developed another to the effect that this, as a reviewing court, was likewise forbidden from exercising that prerogative. The purpose in extending the rule to reviewing courts is indeed logical for the reason that the witnesses are not seen or heard testifying. Their demeanor upon the stand is of much weight in determining truth or falsity, bias, interest and prejudice.

The appellant, as a second ground for reversal, maintains that the verdict is the result of passion and prejudice. It is interwoven with the matter of credibility and the fourth and sixth grounds of error, which are misconduct of the prosecuting attorney and error in the admission of evidence. Before proceeding further, it may be understood that we find no misconduct of the state's attorney that at least is not counterbalanced by the zeal of defense counsel. Matters have been argued on happenings during trial, but most of these colloquies were quietly directed to the court, at least they do not appear within the record. It should be unnecessary to state that this court is bound by the record before it.

And now, considering the second, fourth and sixth claims of error in conjunction with that of credibility. It is the theory of counsel for the accused that a conspiracy existed between the prosecuting witnesses and those that testify as to similar acts to frame Captain Harwood. It is also strongly intimated that Councilman Veho-

vac prompted this concerted action. Such a conspiracy has not been attempted to be proven by direct testimony. The whole of it reposes in cross-examination of state's witnesses and that part thereof denominated as the questions propounded. It is not found that the answers to interrogatories other than such interferences as may be drawn from admissions of acquaintanceship, relationship by contract and by blood and several denied threats claimed to have been made against Harwood. Defense counsel's interrogatories are not, standing alone, evidence in this case. Did these interferences of a subtle concerted motive influence the jury? We seriously doubt that it did. The defense further points out that these state witnesses are entitled to little credence for the reason that if they are co-conspirators or accessories they are unworthy of belief and their evidence should have been given little or no consideration without corroboration from other sources. It is also urged that a few have perjured themselves and that this they admit and that they had been promised immunity.

We would now look to the other side of the picture which the jury considered. The evidence discloses that the director of safety of the City of Cleveland instigated this inquiry. It is common knowledge that other police officers were under indictment for like crimes. That the director first interviewed these witnesses upon his initiative and not they him. That §12824-1 GC grants immunity in such case and such is not accomplished by the act of the director or the prosecutor. That only defense counsel's cross-examination by inference suggested collusion between the state's witnesses. It was advised that moneys had been solicited and accepted by the accused. That Harwood was in charge of these precincts at the time. That when payments stopped, protection ceased and searches by precinct squads began. If corroboration of their testimony was necessary perhaps it is found in the fact that these eight witnesses tell the same stories. The jury may perhaps have noted that Kelley, the go-between, Zimmerman, the friend, and the son of the accused were not offered as witnesses by the defense.

To our notion, and no doubt to that of the jury, the story developed in the cross-examination of Harwood of the search of his home and his wife's grocery store in 1920 or 1921, presented a number of convincing facts. The raid was admitted. Proof of possession of a considerable quantity of illegal liquor was almost conclusively shown to be in the basement of the police sargeant's home. His evidence concerning this was in material respects conflicting. The conflict of testimony was that of the accused with that of his wife when she was recalled to the stand. It is said that this cross-examination of Harwood was improper. We do not find it so. It developed his early disposition of disregard of the prohibition laws. It bore strongly on his credibility and helped establish motive and intent, to profit by disobedience to duty in the matter of the liquor enforcement laws. The further stories as to his son's ownership and management of considerable and questionable enterprises at the age of eighteen and the captain's connection therewith in furnishing capital and as his financial advisor did not reflect to the defendant's benefit but to his further discredit. It may well be that the jury chose to accept as the truth the stories of the eight frankly admitted law violators, at leased one of whom admitted that he had previously committed perjury, rather than accept the story of one who might then have departed from the truth and would not admit it.

We do not find that the jury's verdict was the result of passion and prejudice or that it is not sustained by sufficient evidence. Neither do we find prejudicial error in the admission or exclusion of evidence or in errors of law occurring at and during the trial as claimed. There remains for our consideration the third, seventh and eighth claimed grounds of error which are that the verdict is contrary to law, that there is the error in the charge, and that there was no corroboration of the accomplices' testimony.

The court, in its charge to the jury, said in part,

"In weighing the evidence of an accomplice, the jury should require the corroboration of the testimony by other witnesses of facts and circumstances in the case."

By this rule the accused was advantaged. It is not a proper statement of the law as applied to the crime of bribery. The fact that a witness is an accomplice does not destroy or hold his testimony for naught. It goes only to his credibility. The trial court did in fact proceed further to instruct the jury that the "evidence of an accomplice should be very cautiously received and carefully considered." But when you find

such to be worthy of belief you may give it such weight as your judgment dictates. This is of course the Ohio rule. Any discrepancy in the charge in this matter was in defendant's favor and of which he may not complain.

It is said that the court erred in charging on the matter of conspiracy. It was not averred in the indictment. As herein previously indicated, the accused maintained throughout the trial that there was a conspiracy between Councilman Vehovec. and the eight bootleggers to frame him. The state likewise maintained that a conspiracy existed between Harwood and Kelley and between Harwood and Koree with respect to Mehalaksi, and between Harwood and each accomplice, upon the correct hypothesis that two may conspire. It is not claimed that the charge as given was erroneous but that it was confusing. We do not so find.

Inasmuch as both parties proceeded upon the theory of their respective claimed conspiracies, neither should now be heard to complain that this issue was not in the case. We find no error in this record prejudicial to the complaining party. The judgment is affirmed. Exceptions may be noted.

MONTGOMERY, PJ, and LEMERT, J, concur.