THE STATE OF OHIO, APPELLEE, *v.* FRANKS, APPELLANT.

[Cite as State v. Franks (1979), 61 Ohio App. 2d 51.]

(No. 37734—Decided January 11, 1979.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Ronald B. Bakeman,* for appellant.

KRENZLER, J. On August 20, 1976, the defendant-appellant, Byron Franks, was indicted on two counts of aggravated robbery, R. C. 2911.01, and one count of felonious assault, R. C. 2903.11, arising out of a robbery of a gasoline station on July 29, 1976. The charge of felonious assault was subsequently dropped, and a jury trial was held only on two counts of aggravated robbery of the owner of the station, Joseph Helinski, and his employee, Gregory Jackson. Although the robbery was allegedly committed by four individuals, only the appellant and one co-defendant were present at the trial. The jury returned verdicts of guilty on both charges as to both defendants, and the appellant assigns the following errors in the form of arguments:

"I. The conviction of the appellant is contrary to law in that the circumstantial evidence relied on by the state to prove an essential element of the crime was insufficient as a matter of law.

"II. The prosecutor's final argument was highly inflammatory and prejudicial and as such constitutes reversible error."

At the trial below, Aileen Keeling, age 13, testified that at approximately 11 p.m. on the night of the robbery she walked out onto the porch of her second story residence to observe a car that had just pulled up in front of the house. She noticed that the lights of the car were not on. She also observed her sister, Colleen Keeling, in a parking lot across the street "just standing there like, you know, she was frozen or something." Shortly thereafter her sister ran from the parking lot to the house, came upstairs to the kitchen, had a conversation with Aileen, and called the police. Aileen then went down to the street and wrote down on a piece of paper the license number of the car that was parked in front of the house. The number was BM 286. She also determined that the car was a tannish-brown, newer model, four-door Plymouth. She testified that in the driver's seat of the car was a black male with a large black or tannish hat and black glasses. Returning to the second story porch, Aileen observed three other men running back to the car parked in front of

the house. One man was wearing a whitish baseball cap and another had a bluish pastel shirt. One of the men was carrying something. The three men then entered the car, one in the front seat and two in the back seat and the car drove quickly away without lights.

Aileen testified further that about three minutes after the car left, she and her sister went to the gas station. Both sisters knew the owner, Joe Helinski, and his employee, Gregory Jackson, by name. At the station she found Helinski, Jackson and several police officers. She described her observations of the car and its occupants, including the license number, to the officers.

Aileen's sister, Colleen Keeling, testified that while she was passing through the parking lot across from her house she saw three men run into the gas station and strike Gregory Jackson. She then confirmed her sister's testimony that she had run home and called the police. She also stated that she had observed a black male seated in the car in front of her house wearing a tan hat and glasses.

Joseph Helinski testified that on the night of the robbery he came to the station "to do some book work and make sure Greg was doing all right." He testified that normally the attendant on duty would have some paper money in his pocket and coins in the coin changer. He also stated that money was kept in a locked cabinet in the station.

Mr. Helinski also observed at the station at about 11 p.m. a black male with a "pointed brim baseball cap." At approximately 11:10 an individual walked up behind him in the office of the station, put a gun to Mr. Helinski's head, and said "Don't turn around." The individual then told Mr. Helinski to lie on the floor. As Helinski backed his chair from the desk, the individual noticed that Helinski had a six shot chrome .38 revolver in a holster attached to his belt. The individual struggled with the gun, and the strap attaching the holster to Helinski's belt broke. The individual then took the gun and holster.

Helinski then testified that he was forced to lie face down on the floor and his wallet was taken. He could hear two other persons bringing Gregory Jackson into the room, telling him to give them his coin changer and money. Jackson was also forced to lie down on the floor, and Helinski could see his

uniform from the corner of his eye. Both Helinski and Jackson were pushed. Then the men took the money and two boxes of cigarette cartons marked with the station's stamp and left the station. Gregory Jackson did not have his coin changer on his belt after the robbers left.

Helinski testified that while he was being disarmed by the man who had placed a gun at his head, he noticed that the man was wearing dark brown pants, a light tan colored shirt, and possibly a hat. He also stated that the gun placed to his head was a blue steel revolver with a flat topped barrel and a light colored handle.

Patrolman Smith of the Cleveland Police Department testified that at approximately 11:30 on the night of the robbery, he and Patrolman Neelon received a radio broadcast describing the robbery suspects and the license number of the car. The patrolmen ordered a computer check of the license plate and learned that the car was registered to one Mary Goolsby at 851 Paxton. The officers drove to that address and set up surveillance in a driveway across the street. A short time later the car described in the broadcast pulled into the driveway at 851 Paxton, occupied by four black males, with the driver wearing glasses. The two patrolmen pulled their car into the driveway behind the suspects' car, and arrested the four suspects, including the appellant.

The gun and holster, which Mr. Helinski stated were his, were taken from the waistband of the driver of the car. The flat barrelled blue steel revolver, its handle wrapped in a light colored tape, that Mr. Helinski testified was placed at his head, was recovered from the front left seat of the car. Also confiscated were two boxes containing cartons of cigarettes, subsequently returned to Joseph Helinski.

Officer Smith testified further that the appellant was sitting in the left rear seat of the car and wore no shirt. The officers confiscated a brown shirt from the left rear seat, the same shirt that Mr. Helinski had earlier testified to be "similar" to the one worn by the man who placed a gun at his head. After being advised of his constitutional rights by the officers, the appellant admitted that the shirt recovered from the rear seat of the car belonged to him. The officer was unable to testify whether any money was recovered from appellant's person.

In appellant's defense, his attorney read into the record a stipulation by the parties that neither Joseph Helinski nor his employee, Gregory Jackson, were able to identify the appellant in a line-up several hours after the arrest. It was also stipulated that Gregory Jackson was able to identify the two assailants not present at trial. After entry of the stipulation, appellant rested without presenting further evidence.

The coin changer alleged to have been taken from Gregory Jackson was not recovered.

In his first assignment of error, the appellant argues that there was insufficient circumstantial evidence as a matter of law to prove that he was one of the four individuals who participated in the robbery in issue. In addition, his argument is that certain portions of the evidence, apart from the remainder, are inconsistent with the theory of his guilt, and consistent with the theory that he is innocent, and therefore, that the state failed to prove its case. He relies on *State* v. *Kulig* (1974), 37 Ohio St. 2d 157. Appellant refers to the following facts as being consistent with his innocence: that the victims were unable to identify him; that he had no contraband on his person when arrested; and that Mr. Helinski could not positively identify his shirt.

First, in addressing the sufficiency of circumstantial evidence as to a particular element, it is necessary to examine all of the facts and circumstances in evidence adduced as to that element, and not isolated portions. In *State* v. *Kulig, supra,* at 160, the Supreme Court stated:

"It is settled that where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence. *State* v. *Sheppard* (1955), 100 Ohio App. 345; *Carter* v. *State* (1915), 4 Ohio App. 193. If *such* evidence is as consistent with a theory of innocence as with a theory of guilt, the doubt must be resolved in favor of the theory of innocence." (Emphasis added.)

As used by the Supreme Court in *Kulig,* it is clear that the word "such" does not refer to isolated portions of the evidence. It refers instead to all of the evidence relied upon to prove the element in dispute. That this interpretation is cor-

rect is shown by examining the cases cited in the above passage from *Kulig*. In *State* v. *Sheppard* (1955), 100 Ohio App. 345, 385, this court stated: "If, therefore, the jury, after careful deliberation, found that there was any possible hypothesis of innocence, *after a consideration of all the evidence,* then the defendant would legally be entitled to be discharged***." (Emphasis added.) In *Carter* v. *State* (1915), 4 Ohio App. 193, 196, the Court of Appeals for Hamilton County stated that the facts and circumstances relied upon to establish guilt "when taken together" must be irreconcilable with innocence. Accordingly, insofar as the appellant's argument rests on isolated portions of the evidence, it is incorrect.

The appellant is also attempting to change the law in regard to the burden and degree of proof in criminal cases by misinterpreting *State* v. *Kulig, supra.*

The law in Ohio in regard to burden and degree of proof is stated in R. C. 2901.05 (A) and (D):

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused.***

"(D) 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

*State* v. *Kulig, supra,* does not change this rule, but merely emphasizes that the state must prove each and every element of a crime beyond a reasonable doubt.

In *State* v. *Kulig, supra,* the defendant-appellant was tried and convicted of embezzling the property of an estate of which he was the executor. The Ohio Supreme Court stated

---

* This section has been amended effective November 1, 1978, but the changes are not pertinent to the issues raised in this case.

that an examination of the record disclosed a serious lack of evidence, direct or circumstantial, regarding the issue of appellant's intent to convert estate property to his own use. Intent is an essential element of the crime of embezzlement. The Supreme Court stated that the executor was properly in possession of estate property as long as his purpose in holding it was not contrary to the rights and interests of the estate. Accordingly, proof of possession standing alone was insufficient to support a conviction of embezzlement since this circumstantial evidence of wrongful intent was equally consistent with the conclusion that the appellant was acting properly within the framework of his authority as executor.

The Supreme Court then stated that while it is not ordinarily the function of a reviewing court to weigh evidence developed at trial, it may do so in order to determine whether that evidence is of sufficient probative force to support a finding of guilt beyond a reasonable doubt which is required for a conviction in a criminal case. *State* v. *Kulig, supra,* at 159. The court stated that "where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." *State* v. *Kulig, supra,* at 160.

The foregoing statements by the Supreme Court in *Kulig* do not change the rule in regard to burden and degree of proof, but serve merely as a test or cross-check as to whether there is sufficient evidence of each and every element beyond a reasonable doubt. If the circumstantial evidence relied upon to prove an essential element of a crime is reconcilable and consistent with any reasonable theory of an accused's innocence, the defendant cannot be found guilty because there is not proof beyond a reasonable doubt of his guilt.

Applying the above principles to the case at bar, we find that there was substantial probative evidence adduced to prove that the appellant participated in the robbery. Taken as a whole, this evidence was consistent only with the appellant's guilt, and irreconcilable with any *reasonable* theory of innocence.

There is the Keeling sisters' observation of the three individuals running into the station, and the one individual in the car. Helinski's description of the shirt worn by the in-

dividual who placed a gun at his head, and his description of the gun, match the shirt and gun found in the car. The appellant admitted that the shirt found in the left rear seat of the car where he was sitting was his. The appellant wore no other shirt at the time he was apprehended. The cigarettes with the station identification marks were found in the car where the appellant was arrested, as was the gun taken from Joe Helinski. The Keeling sisters testified that the three men running to the car were carrying something. The license plate number written down by Aileen Keeling matched that of the car in which the appellant and three other individuals were apprehended. Shortly after the crime was reported, the four persons were found in the car with some of the contraband.

Based on this evidence, we find the appellant's first assignment of error to be without merit.

In his closing argument the prosecutor stated concerning the appellant: "There is testimony that he had 24 bucks on him, I believe." There was in fact no such testimony, and therefore, the statement was improper. We do not agree with the appellant's second assignment of error, however, that this single statement in an otherwise unobjectionable argument was such as to deny him his right to a fair trial.

The statement was not repeated. The jury was instructed by the judge in his charge that the closing arguments of counsel were not evidence. The jury was also instructed that "[w]henever reference is made to evidence upon which the case is to be decided, the jury will remember and understand that we mean the testimony as you have heard it from the mouths of several witnesses who testified throughout the trial, together with the exhibits which were offered and received as evidence.***" These instructions obviated any prejudice that may have occurred as a result of the prosecutor's single misstatement.

Accordingly, the appellant's second assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

CORRIGAN, C. J., and PATTON, J., concur.