THE STATE OF OHIO, APPELLEE, *v.* BISSANTZ, APPELLANT.

(No. 1074—Decided August 25, 1982.)

*Mr. William B. Stapleton,* special prosecutor, for appellee.

*Mr. James N. Perry,* for appellant.

PATTON, J. Defendant-appellant, Harold Bissantz, was elected as a County Commissioner for Clermont County on January 3, 1977. He ran for reelection in November 1980 and lost. His term as commissioner was due to expire on January 2, 1981.

On December 20, 1980, Am. Sub. H. B. No. 1122 was passed by the Ohio legislature. It provided for pay raises for the Clermont County Treasurer, Sheriff, Clerk of Court, Recorder, County Commissioners, Prosecuting Attorney, Engineer and Coroner elected in the November 1980 election. In order to become effective, the commissioners in each county had to approve the pay bill on or before December 31, 1980.

On December 23, 1980, the County Commissioners of Clermont County met.

Appellant indicated he was opposing the bill's passage. The commissioners requested a certification of funds available from the County Auditor's office. The matter was then placed on the agenda for the December 30th meeting of the commissioners.

The evening of December 29, 1980, George Pattison, an assistant prosecutor and Prosecutor-elect of Clermont County, telephoned appellant to ask him about the status of the pay bill. Appellant never gave Pattison a direct answer.

On December 30, 1980, at 8:40 a.m., a Board of Commissioners' meeting was held. Prior to the meeting, appellant talked to another commissioner, Robert Croswell. According to Croswell, appellant told Croswell that if they wanted his support for the pay raise bill, Croswell and a commissioner-elect, Dale Romar, would have to get together and make arrangements for a job for appellant.

The commissioners then met. A matter concerning the county airport was considered. Thereafter, appellant conversed with Walter Carter, the Clermont County Engineer, in appellant's office and said that in relation to the pay bill, all appellant wanted was a guarantee of a job.

The commissioners continued their meeting and the pay raise bill came up. Croswell made a motion to pass the pay raise bill. It died for lack of a second.

Thereafter, appellant motioned Pattison into his office. Appellant told Pattison that the whole problem regarding the pay raise was Croswell's fault and Croswell could solve the problem by getting together with Romar to guarantee appellant a job.

Pattison left appellant's office and told Robert Jones, then prosecuting attorney, the conversation he had just had with the appellant.

On December 31, 1980, Pattison received a telephone call from appellant. Appellant was looking for Croswell. Pattison asked appellant about the pay bill and Jones listened in on the conversation. Appellant said that if he was given a job, he would vote for the pay bill. It became apparent to appellant that no job guarantee was forthcoming.

The commissioners met for their final meeting, and the salary bill did not come up for consideration.

Appellant was indicted for violating R.C. 2921.02(B), which provides as follows:

"No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept any valuable thing or valuable benefit to corrupt or influence him with respect to the discharge of his duty."

Trial by jury was had, and appellant was found guilty. He appeals and assigns seven errors.

I

Appellant's first assignment of error states:

"The court erred in admitting the testimony of assistant prosecuting attorney Pattison against county commissioner Bissantz over Bissantz's objections."

Appellant maintains that Pattison, assistant prosecuting attorney, was barred under the attorney-client privilege from testifying against appellant without appellant's permission. His contention is without merit.

R.C. 2317.02(A) sets forth the attorney-client privilege as follows:

"The following persons shall not testify in certain respects:

"(A) An attorney, concerning a communication made to him by his client in that relation or his advice to his client; * * *"

"Client" is defined in R.C. 2317.021 as follows:

"As used in division (A) of section 2317.02 of the Revised Code:

" 'Client' means a person, firm, partnership, corporation, or other association that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal service or advice from him in his professional capacity, or consults an attorney employee for legal service or advice, and who communicates, either directly or through an agent, employee, or other representative, with such attorney; * * *." (Emphasis added.)

Appellant maintains he was Pattison's client insofar as R.C. 309.09(A) provides that the prosecuting attorney is the advisor of the Board of Commissioners. R.C. 309.09(A) states:

"The prosecuting attorney shall be the legal adviser of the board of county commissioners * * *. He shall prosecute and defend all suits and actions which any such officer or board directs or to which it is a party * * *."

The relationship between appellant and Pattison was not one of attorney-client. The evidence reveals appellant approached Pattison because they were of the same political party and told him that the pay raise issue could be settled in his favor if Pattison could guarantee appellant a job. Appellant was not consulting Pattison for the purpose of retaining him or securing legal advice or service. Even though Pattison was, pursuant to statute, the legal advisor of the Board of County Commissioners of which appellant was a member, that fact did not create attorney-client relationship because appellant did not discuss legal issues concerning county government with Pattison.

Assuming arguendo appellant and Pattison's relationship was that of attorney-client, Pattison's testimony would still have been admissible. It is well settled that an attorney is qualified to testify regarding any communication his client makes to him in promoting a criminal activity. See, generally, Annotation, 125 A.L.R. 508; see, also, United States v. Gordon-Nikkar (C.A. 5, 1975), 518 F.2d 972 (where the court stated that the policy underlying the attorney-client privilege was to promote the administration of justice); United States v. Hoffa (C.A. 6, 1965), 349 F.2d 20, affirmed (1966), 385 U.S. 293; State v. Karcher (1951), 155 Ohio St. 253 [44 O.O. 258]; State v. Mullins (1971), 26 Ohio App.2d 13 [55 O.O.2d 30] (wherein the court, at page 18, stated: "A privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society"); In re Bostwick (1931), 43 Ohio App. 76 (holding that where communications to a prosecuting officer were made for evil purposes, such communications lost their privileged character); Hayes v. Lindquist (1926), 22 Ohio App. 58 (testimony between attorney and his client was competent because it related to proposed future wrongdoing on the part of the client); Golner v. State (1912), 19 C.C. (N.S.) 317.

In this assignment, appellant also maintains that Pattison breached his duty to appellant by failing to tell appellant he was violating the law in making these solicitations. Appellant's contention is without merit. Pattison was under no duty to inform appellant he was committing a crime; and even if he had been, appellant had already solicited Croswell and Carter before he spoke to Pattison and the crime had been committed.

The first assignment of error is overruled.

II

Appellant's second assignment of error states:

"The trial court committed prejudicial [sic] when it charged the jury concerning the essential elements of the of-

fense of bribery in that the court did not charge the jury that Bissantz must have had a criminal intent at the time of the commission of the acts alleged in the indictment in that he must have known that his conduct was unlawful."

In his second assignment of error, appellant maintains the trial court erred in failing to instruct the jury on criminal purpose or intent as part of the *mens rea* of the offense of bribery. His assignment is without merit.

Appellant was convicted of violating R.C. 2921.02(B). That statute provides:

"No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, *shall knowingly solicit* or accept any valuable thing or valuable benefit *to* corrupt or *influence him* with respect to the discharge of his duty." (Emphasis added.)

The standard set forth in the statute is "knowingly." "Knowingly" is defined in R.C. 2901.22(B) as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such, circumstances probably exist."

The trial court in the instant case properly instructed the jury regarding appellant's culpable mental state:

"Before you can find the defendant guilty, you must find beyond a reasonable doubt that, on or about the [*sic*] December 30th and December 31st, 1980 in Clermont County, Ohio, that the defendant, first, was a public servant; second, after he was elected as such, that he knowingly solicited a valuable thing or benefit; third, that he did so to corrupt or influence himself with respect to the discharge of his duty as a county commissioner.

"* * *

"Knowingly. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause

a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Putting it another way, knowingly means that a person is aware of the existence of the facts that his acts will probably cause a certain result or be of a certain nature."

Despite the explicit provisions of R.C. 2921.02(B), which establishes "knowingly" as the requisite culpable mental state, appellant urges this court to adopt a higher degree of culpable mental state, to wit: purposely. In reliance on his proposition, appellant cites *State* v. *Bauer* (1894), 1 N.P. 103; *State* v. *Harwood* (1937), 26 Ohio Law Abs. 473; *Curtis* v. *State* (1925), 113 Ohio St. 187. These cases were decided prior to January 1, 1974, the effective date of R.C. 2921.02(B). R.C. 2921.02(B), unlike its predecessors, specifically sets forth the culpable mental state of knowingly.

In *State* v. *Wenger* (1979), 58 Ohio St. 2d 336 [12 O.O.3d 309], the Supreme Court held that where the crime of assault required the person act knowingly, no higher degree of culpable mental state was appropriate. Likewise, in the instant case where the statutory section sets forth the mental state of "knowingly," this court will not require a higher mental state.

Accordingly, the second assignment of error is overruled.

### III

Appellant's third assignment of error states:

"The court erred in charging the jury on circumstantial evidence by failing to include in that portion of its charge on circumstantial evidence an instruction on 'equal inferences.' "

Appellant claims he was entitled to an instruction as follows:

"If the circumstances create inferences that are equally consistent with either innocence or guilt, such inferences

must be resolved in favor of the defendant's innocence."

The trial court's refusal to give these instructions was not erroneous. The evidence implicating appellant consisted almost entirely of direct evidence and little, if any, circumstantial evidence. Robert Croswell, Walter Carter, George Pattison, and Robert Jones all testified that they had witnessed appellant solicit county officials for a job commitment in return for his favorable vote on Am. Sub. H. B. No. 1122. It is well settled that a trial court is obligated to instruct the jury only on the law arising from the facts which the evidence tends to disclose. See *Callahan* v. *State* (1871), 21 Ohio St. 306; *Hart* v. *Coca-Cola* (1963), 119 Ohio App. 90 [26 O.O.2d 227]; *Frank Bros.* v. *The Far Store* (1923), 18 Ohio App. 275; *McAllister* v. *Soule* (1937), 24 Ohio Law Abs. 118; *State* v. *Gear* (1900), 7 N.P. 477. Indeed, it is error for the trial court to charge on issues not made by the pleadings or evidence in the case. *Brooks* v. *Lindsay* (1923), 17 Ohio App. 225. Since the testimony adduced at trial consisted substantially, if not entirely, of direct evidence, the trial court did not err in refusing to give the requested instruction.

We note that although the trial court refused to give the above-noted instruction on circumstantial evidence, the court did instruct the jury on the definition of circumstantial evidence and told the jurors that "circumstantial evidence by itself will justify a finding of guilty if the circumstances are entirely consistent with the defendant's guilt and are wholly inconsistent or irreconcilable with any reasonable theory of the defendant's innocence and are so convincing as to exclude a reasonable doubt of the defendant's guilt." At this juncture, the appellant's requested instructions would have logically followed and should have been given were it not for the fact that the circumstantial evidence was *not* such as to "create inferences that [were] equally consistent with either guilt or innocence." As mentioned above, the evidence presented at trial was largely, if not completely, direct evidence and the circumstantial evidence presented did not create inferences that were equally consistent with either guilt or innocence.

Accordingly, the third assignment of error is overruled.

IV

For his fourth assignment of error, appellant states:

"The trial court erred in denying Bissantz's request for an acquittal based upon Bissantz's claim that the offense of soliciting a bribe as defined in O.R.C. 2921.02(B) was constitutionally infirm as applied to the evidence adduced at Bissantz's trial."

Appellant maintains his motion for acquittal made pursuant to Crim. R. 29 should have been granted on the grounds that R.C. 2921.02(B) is unconstitutional insofar as it is overbroad in making specific innocent conduct criminal. We disagree.

A statute will be void for overbreadth when the scope of the statute is so broad that it includes activity which would otherwise be legal. *Thornhill* v. *Alabama* (1940), 310 U.S. 88. R.C. 2921.02(B) provides:

"No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept any valuable thing or valuable benefit to corrupt or influence him with respect to the discharge of his duty."

We do not find this statute to be so overbroad so as to include activity that would otherwise be legal.

We note that appellant's reliance upon *State* v. *Jacobellis* (1962), 173 Ohio St. 22 [18 O.O.2d 207], for the proposition that the words "knowingly possess" include "scienter" (guilty knowledge) and "mens rea" (guilty purpose) is not applicable to this case, because that case

was decided before the effective date of R.C. 2901.22(B) which defines knowingly as stated in Part II, *supra.*

The fourth assignment of error is overruled.

V

For his fifth assignment of error, appellant states:

"The court erred by permitting the prosecutor to argue, over the objections of Bissantz for a conviction based upon a public demand for honesty and integrity from politicians holding public office."

Appellant takes issue with comments made by the prosecutor in his closing argument. Appellant failed to object to all but one of these statements. This court therefore will not review any of those statements not objected to below. See *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98], which held in paragraph one of the syllabus:

"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. * * *"

See, also, *State* v. *Young* (1908), 77 Ohio St. 529.

The one statement the appellant did timely object to follows:

"Now, last night, I don't know — I got — we had a meeting with the Judge here and I got home a little late and I sat down and I believe it was approximately 9:00, the President of the United States was on and maybe some of you heard him and he — this was the first public appearance that he had made since the attempted assassination and he reflected upon that a little bit and he, in his speech, he said that — he pointed out the virtues of our society and he also said that he asked for creativity and courage for the future.

"Well, ladies and gentlemen of this jury, I'm asking you for courage. I'm asking you to say there is a right and there is

a wrong and that we want honesty and integrity and we want the public trust to be fair and honest, we want it there; we want our public officials to act accordingly. We want our public officials to be something that we can show to our ninth grade * * *.

"MR. PERRY: Excuse me, may I approach the bench, Your Honor?

"COURT: Yes, you may.

"(Brief conference at the bench.)"

We find nothing erroneous in the comments made by the prosecutor in his closing statement. First of all, the comments made by the prosecutor did little more than characterize the conduct of the appellant as disclosed by the evidence and to denounce the offense for which he was charged. Such comments are not erroneous. See *State* v. *Price* (1979), 60 Ohio St. 2d 136 [14 O.O.3d 379] (holding that the prosecutor's closing remarks concerning the ages of the victim and witnesses did not constitute an invitation to the jury to go beyond the evidence presented at trial). See, also, *Jones* v. *State* (1919), 11 Ohio App. 441; *Andrews* v. *State* (1912), 15 C.C. (N.S.) 241.

Assuming *arguendo* the prosecutor's comment was erroneous, such error was not prejudicial. The jury was instructed that the closing arguments of counsel were not evidence. In addition, the jury was charged that the evidence consisted solely of "all the testimony received from the witnesses and the exhibits * * * any facts agreed to by counsel or any facts which the Court requires you to accept as true." These instructions obviated any prejudice that may have occurred as a result of the prosecutor's statement. See *State* v. *Franks* (1979), 61 Ohio App. 2d 51 [15 O.O.3d 72].

Accordingly, the fifth assignment of error is overruled.

VI

Appellant's sixth assignment of error states:

"The court erred by denying Bissantz's motion for an acquittal at the

end of all the evidence because the state failed to establish that a 'job commitment' was a valuable thing or benefit.''

As mentioned above, appellant was convicted of violating R.C. 2921.02(B). That section requires that one solicit "any valuable thing or valuable benefit." Appellant maintains that a job commitment is not a valuable thing. We disagree.

In *Scott* v. *State* (1923), 107 Ohio St. 475, the Supreme Court held that soliciting improper sexual relations was a valuable thing within the meaning of R.C. 2921.02(B). The court stated at page 487:

"It would defeat the plain purpose of the statute, if the meaning of the word 'value' were to be so strictly limited that valuable things offered or received in cases of alleged bribery or solicitation of bribery should be held to be only things which are very generally desirable. It is impossible, of course, to establish value which is universal. On a desert island gold has no value, because no one desires it. Raw blubber has value as food at the north pole, but none in Ohio, because no one desires it. The test of the value must necessarily be the desire of some person or persons, not necessarily of most persons or all persons, for the thing in question."

See, also, *State* v. *Lieberman* (1961), 114 Ohio App. 339 [17 O.O.2d 464]. We hold that a job commitment is a valuable thing because at least some people desire it, and in this case, appellant clearly desired it.

The sixth assignment of error is overruled.

## VII

For his final assignment of error, appellant states:

"Bissantz's conviction for bribery is clearly and manifestly against the weight of the evidence as a matter of law."

Appellant's contention is without merit. Appellant was found guilty of violating R.C. 2921.02(B), which provides that no person, either before or after he becomes a public servant, shall knowingly solicit any valuable thing to influence him with respect to the discharge of his duty. There was sufficient evidence in the record on each element of this offense.

First, there was no dispute that appellant was a public servant. Second, there was ample testimony that appellant approached several county officials and asked for a job commitment in exchange for his vote on the pay raise. The Ohio Supreme Court in *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], held that so long as there is some credible evidence going to all the essential elements of the case, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. See, also, *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366].

Accordingly, the seventh assignment of error is overruled.

Judgment is affirmed.

*Judgment affirmed.*

CORRIGAN, P.J., and CELEBREZZE, J., concur.

CORRIGAN, P.J., PATTON and CELEBREZZE, JJ., of the Eighth Appellate District, sitting by designation in the Twelfth Appellate District.