THE STATE OF OHIO, APPELLEE, *v*. MULLINS, APPELLANT.

(No. 865—Decided February 12, 1971.)

Mr. *Everett Burton*, prosecuting attorney, and *Mr. Thurl R. Blume*, for appellee.

*Messrs. Kimble, Schapiro, Stevens, Harcha & Young*, and *Mr. Roger Clark*, for appellant.

GRAY, P. J. This cause is in this court on appeal from a judgment overruling a motion for a new trial. Defendant had previously been convicted in a jury trial of the offense of larceny.

Defendant, feeling aggrieved at this turn of events, filed his notice of appeal and assigned the following errors.

"First Assignment of Error—The court erred in refusing to grant defendant's motion for a mistrial.

"Second Assignment of Error—The court erred in refusing defense counsel's request to inspect the grand jury records relative to the testimony of Paul Carson."

Defendant was charged with the larceny of parts of a Civil War brass cannon that had been placed in a cemetery in the city of Portsmouth. The cannon was owned by the city. The two assignments of error concern the admission of testimony of Helen Carson and her son, Paul. Helen Carson was a frequent female companion of defendant. A few days before the trial, a grand jury met in Scioto County to investigate this case. At this session, Helen Carson and her son Paul testified.

When first called as a witness in the present case, Helen Carson left the witness stand and refused to testify. She was recalled the next day. She refused to answer some questions on the ground that the answers thereto might incriminate her. On motion of the state, the prosecution was given the right to cross-examine her. The questioning went as follows.

"Q. On the 4th day of May, 1970, it would be Monday of this week, did you appear before the Scioto County Grand Jury?

"A. I did.

"Q. I will ask you, Mrs. Carson, whether or not this question was asked of you. 'And how did it get to your house?' And this answer given: 'It was brought to my house in my car because Coby Mullins at that time had a 1960 Buick that broke down at the Greenlawn Cemetery. As a matter of fact it sat there on the Offnere Street side for four or five days, approximately longer and he went to my house and got my 1969 car and then the cannon was brought to my house in that car.'

"Mr. Young: Objection on the basis of incompetency and admissibility of the question and responsiveness of the answer.

"The Court: The question is whether or not she was asked that question and gave that answer on that day. Objection overruled and you may answer yes or no.

"A. What's your question?

"Q. Was that question asked of you and that answer given?

"A. Yes.

"Q. Was this question asked of you and this answer given: 'Who took it down?' Answer: 'The boys brought it down there in my car. Mr. Mullins, as he told me had it sold for $50.00.' Was that question asked and that answer given?

"A. Mr. Burton, the question was asked—the answer was given, but. . . .

"Q. You have answered the question. I will ask you whether or not this question was asked and this answer given. 'Do you know who had it stolen?' Answer: 'Yes, sir.' Was that question asked and that answer given? You may answer yes or no.

"A. No.

"Q. Was this question asked and this answer given? Question, 'Who?' Answer: 'Mr. Mullins, Frank Greene, and Jack Eldridge.' Was that question asked and that answer given?

"A. No.

"Q. Was this question asked and this answer given? 'Did you hear any discussion from Mr. Mullins prior to the theft of the cannon that it was going to be stolen?' Answer: 'He said this party had offered $50.00 for it.' Was that question asked and that answer given?

"A. No.

"Mr. Young: I am going to object, to all questions as to the form, competency and materiality as they affect this particular proceeding.

"The Court: The objection will be overruled."

The official court reporter who reported both the session of the grand jury and the petit jury was called. The minutes of the grand jury revealed the following:

"Q. And was this answer given? 'It was brought to my house in my car because Coby Mullins at that time had a 1960 Buick that broke down at the Greenlawn Cemetery. As a matter of fact, it sat there on the Offnere Street side for four or five days, approximately longer and he went to my house and got my 1969 car and then the cannon was brought to my house in that car.'

"A. Yes, it was."

"Q. Was this question asked. 'Who took it down?'

"A. Yes, sir.

"Q. And this answer given: 'The boys brought it down there in my car. Mr. Mullins, as he told me, had it sold for $50.00.'

"A. Yes, it was.

"Q. Was this question asked: 'Do you know who had it stolen?'

"A. Yes, sir.

"Q. And this answer given: 'Yes, sir.'

"A. Yes, sir.

"Q. This question: 'Who?'

"A. Yes.

"Q. And this answer: 'Mr. Mullins, Frank Greene and Jack Eldridge.'

"A. Yes, it was.

"Q. And this question. 'Did you hear any discussion from Mr. Mullins prior to the theft of the cannon that it was going to be stolen?'

"A. Yes, sir.

"Q. And this answer: 'He said this party had offered $50.00 for it.'

"A. Yes, it was.

"Mr. Burton: No further questions."

It appears in the brief of counsel and the record that Mr. Roger L. Clark, an attorney at law of the Scioto County Bar, represented Helen Carson in another matter. At the trial of the cause, another attorney, Mr. Jack Young, was co-counsel with Mr. Clark.

Counsel for defendant explains his position in this case in this manner:

"Although in the case at bar Helen Carson was not accused of the same offense for which this defendant was being tried, counsel for this defendant was placed in a position of dual representation when it became apparent that Mrs. Carson's testimony at this defendant's trial could subject her to possible prosecution for perjury. Thus, counsel was placed in the unfortunate position of having to advise Mrs. Carson to remain silent while realizing that

her testimony at this defendant's trial was tending to exculpate this defendant.

"The Sixth Amendment to the United States Constitution provides in part that an accused shall have the right to be confronted by the witnesses against him and a right to the assistance of counsel. These rights are incorporated into the due process clause of the Fourteenth Amendment and are thereby binding upon the states.

"The right to assistance of counsel presupposes the effective assistance of counsel unhampered by the problems inherent in dual representation. See *Glasser* v. *United States,* 315 U. S. 60.

"Although in the case at bar there was no dual representation per se, the problem which presented itself to this defendant's counsel at the trial of this case is exactly the same as that presented in the case of *State* v. *Oliver, supra.* Also, the record in this case shows that this defendant's counsel had no knowledge that Helen Carson had appeared before the Scioto County Grand Jury and that counsel further had no knowledge that the said Helen Carson had at any time made any statements tending to incriminate this defendant until the trial was in progress.

"Defendant respectfully submits that the trial court erred in refusing to grant defendant's motion for a mistrial, and that this defendant's rights to adequate representation were prejudiced by forcing counsel for the defendant to proceed with the case while at the same time advising a prosecution witness as to her privileges against self-incrimination."

Let us now examine the facts. The defendant was being tried for the larceny of a brass cannon. The witness, Helen Carson, was not being tried for anything. She did not consult Mr. Clark about the theft of the cannon. She did not consult her attorney, Mr. Clark, about testifying at this trial or he would not have been taken by surprise. If she had done so, it would have been about a future event and hence it would not have been privileged. If she had consulted her attorney about committing perjury at a future time, *i. e.,* at the trial of defendant, it would have had

to be about a future event and there was no privilege in that instance either.

A priviledged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society.

The attorney-client relationship offers no shield to either client or attorney if the client had been engaged in a plan to commit a crime in the future. *Clark* v. *United States,* 289 U. S. 1, 15, 77 L. Ed. 993, 53 S. Ct. 465; *Sawyer* v. *Barczak* (C. A. 7 Cir.), 229 F. 2d 805, 809; *cert. denied* 351 U. S. 966, 100 L. Ed. 1486, 76 S. Ct. 1025; *rehearing denied* 352 U. S. 860, 77 S. Ct. 24, 1 L. Ed. 2d 70; *United States* v. *Weinberg* (C. A. 3 Cir.), 226 F. 2d 161, 172, *cert. denied,* 350 U. S. 933, 100 L. Ed. 815, 76 S. Ct. 305.

Defendant is relying on *Glasser* v. *United States,* 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457, contending that since his counsel is representing him and also representing Helen Carson, in another case, he has been denied the effective assistance of counsel. This claim is baseless. The United States Supreme Court recognized in *Glasser* that a defendant must show some conflict of interest between himself and other defendants represented by his attorney before he can claim successfully that the representation of the defendant and the witness deprived defendant of his right to effective counsel. It must be remembered that Mr. Clark did not represent Helen Carson in any matter then pending before the court. Clark represented her on some other past transaction, but certainly could not represent her in a future transaction, when she was about to or would commit perjury. See *United States* v. *Bentvena* (C. A. 2 Cir.), 319 F. 2d 916, and cases therein cited.

This assignment of error is overruled.

We now direct our attention to the second assignment of error.

Paul Carson, aged 15, son of Helen Carson, was called by the state to testify at the trial of defendant. The record shows that he was then an inmate at the Juvenile Diagnostic

Center in Columbus. Paul had previously testified before the grand jury.

During the course of the examination of this witness by the prosecution, the state moved the court for permission to cross-examine him, alleging surprise. The court granted the motion. The witness testified as follows:

"Q. Do you recall this question being asked: 'Do you know a man by the name of Coby Mullins?'

"A. Yes, sir.

"Mr. Young: Objection.

"Q. And your answer . . .

"The Court: Objection overruled.

"Mr. Young: Will the court note our objection for the record.

"The Court: Let the record show a continuing objection to this line of questioning.

"Q. Mr. Carver, do you recall this question being asked: 'Who left your house?'

"A. No, sir.

"Q. And this answer given: 'Jeff Staten, Jacky Eldridge, Frank Greene, and Coby Mullins.'

"A. No, sir.

"Q. Do you recall this question being asked: 'Was there any conversation there between Mr. Mullins and these other people you mentioned prior to their leaving?'

"A. No, sir.

"Q. Do you recall this question being asked: 'How do you know they sold it?'

"A. No, sir.

"Q. And this answer: 'He told them before they left they were going to sell it and for about $50.00.'

"Mr. Young: Objection and motion to strike.

"The Court: Objection overruled.

"Q. Paul, you know Coby Mullins, don't you?

"A. Yes, sir.

"Q. Is he in the courtroom?

"A. Yes, sir.

"Q. Where is he?

"A. Sitting right there (pointed to the defendant).

"Q. I will ask you again, was he in your house on the night of the 13th?

"Objection.

"Overruled.

"A. I don't remember.

"Q. You don't remember?

"A. No, sir.

"Mr. Young: I am moving we be given an opportunity to look at the record. You can't read part of it. We're entitled to all of it.

"The Court: The motion will be overruled in the absence of more specific authority."

At this juncture defendant moved the court to permit him to examine the grand jury minutes. The official court reporter was called to testify concerning the testimony of Paul Carson at the grand jury session. The following questions and answers were introduced into the record from the grand jury minutes.

"Q. I will ask you if you had occasion to take the testimony of a Paul David Carson for the Scioto County Grand Jury that day?

"A. Yes, sir.

"Q. I will ask you if the following question was asked Mr. Carson. 'Do you know a man by the name of Coby Mullins?' And the answer, 'yes, sir.'

"Mr. Young: Objection. I will withdraw the objection.

"A. Yes, it was.

"Q. Do you recall the following question being asked and answer given. 'Who left your house?' 'Jeff Staten, Jacky Eldridge, Frank Greene, and Coby Mullins.'

"A. Yes, sir.

"Q. Do you recall the following question being asked and answer given. 'Was there any conversation there between Mr. Mullins and these other people prior to their leaving?' 'No, sir.'

"A. Yes, sir.

"Q. Do you recall the following question being asked and answer given. 'How do you know they sold it?' An-

swer, 'He told them before they left they were going to sell it and for about $50.00.'

"A. Yes, sir.

"Mr. Blume: No further questions."

The trial court overruled the motion. Such ruling became the basis for this assignment of error.

The Supreme Court of Ohio has expressed its opinion on this subject in *State* v. *Laskey,* 21 Ohio St. 2d 187, wherein the court said at page 191, 192:

"In this case, appellant sought discovery of the grand jury transcript before trial for purposes of preparation. Generally, proceedings before a grand jury are secret and an accused is not entitled to inspect grand jury minutes before trial for the purpose of preparation or for purposes of discovery in general. This rule is relaxed only when the ends of justice require it, such as when the defense shows that a particularized need exists for the minutes which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co.* v. *United States* (1959), 360 U. S. 395, 400, 3 L. Ed. 2d 1323, rehearing denied, 361 U. S. 855, 4 L. Ed. 2d 94. See 1 Antieau, Modern Constitutional Law, 300; 20 A. L. R. 3d 7, 19.

"It is also well settled that the allowance or overruling of various discovery motions in a criminal case rests within the sound discretion of the trial court, and only in cases of clear abuse will that discretion be disturbed upon review. See, for example, *State* v. *Hill* (1967), 12 Ohio St. 2d 88, 232 N. E. 2d 394."

A search of grand jury minutes is permitted where it is necessary to determine if the direct grand jury testimony of the witness is inconsistent with the witness's trial affirmations. The truth of the witness's previous evidence before the grand jury is not at stake. Any variance is only to shake the later testimony. *United States* v. *McGowan* (C. A. 4 Cir.), 423 F. 2d 413.

The testimony of Paul Carson before the petit jury did not inculpate the defendant, so he did not have anything to complain about. Therefore, whether Paul Carson testified differently before the petit jury than before the grand jury

was of no moment to defendant. The ends of justice certainly did not require that the trial court grant the motion. There was no error here. The trial court properly exercised its discretion in making this ruling.

In order for an alleged error on the part of the trial court to warrant reversal of a criminal conviction, such error must have prejudiced the defendant. *State* v. *Carter*, 21 Ohio St. 2d 212.

We find no error to the prejudice of defendant among those assigned and argued, therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE and STEPHENSON, JJ., concur.