[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 379.]

THE STATE EX REL. NIX ET AL. *v.* CITY OF CLEVELAND ET AL.

[Cite as *State ex rel. Nix v. Cleveland*, 1998-Ohio-290.]

*Public records—Mandamus to compel release of investigatory and other records pertaining to alleged illegal wiretapping by Cleveland police officers or other individuals—Writ denied, when—Attorney fees denied, when.*

(No. 98-68—Submitted August 19, 1998—Decided October 14, 1998.)

IN MANDAMUS.

_____

{¶ 1} This is one of several acrimonious cases arising from the following pertinent facts. In 1993, relator John H. Nix, a licensed securities broker, befriended John R. Master, an elderly retired physician and widower. Nix subsequently assisted Master in personal and business matters and moved into Master's Brookside Drive residence in respondent city of Cleveland. Nix, Master, and relator Rebekah Deamon formed a partnership to build homes on undeveloped land owned by Master that was adjacent to his home. According to Master, his neighbors became upset about the prospective development of the property.

{¶ 2} During this period, Nix informed the FBI that bearer bonds owned by Master had been stolen by Master's relatives, Lillian and Orlando Autuori. Relators, Nix, Deamon, attorney Richard C. Klein, and accountant William A. Weinkamer, alleged that Cleveland Police Officer Sue Sazima, the grandniece of both Master and the Autuoris, became involved in the dispute between Nix and Master and their neighbors because Sazima wanted to assist the Autuoris and gain control of Master's assets. According to relators, the Brookside Drive residents, Sazima, and others conspired to achieve their various objectives by attempting to have Nix indicted for defrauding Master to garner control of his assets.

**{¶ 3}** Relators claim that, as part of the alleged conspiracy, telephone conversations conducted by Nix and Master from their Brookside Drive home were illegally intercepted and recorded in 1994. The probate court later appointed Nix conservator of the estate and person of Master, and Nix learned about the wiretapping.

**{¶ 4}** Upon relators and Master's request, the Professional Conduct Internal Review Unit ("PCIR Unit") of respondent Cleveland's Division of Police and the Cuyahoga County Prosecuting Attorney's Office conducted a criminal investigation of the wiretapping. In May 1995, relators requested to inspect all investigative records relating to the wiretapping and all tape recordings or transcripts of tape recordings of the intercepted telephone conversations. After various Cleveland officials refused, relators and Master brought an action seeking a writ of mandamus to compel city officials to provide access to the requested records under the Public Records Act, R.C. 149.43, and to investigate the wiretapping. We denied the writ to compel further investigation and ordered the city officials to submit the PCIR Unit investigative reports under seal for an *in camera* inspection. *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 661 N.E.2d 180.

**{¶ 5}** Upon examining the police investigative records submitted under seal, we held that the records were exempt from disclosure under the R.C. 149.43(A)(2)(c) work-product, the R.C. 149.43(A)(2)(a) uncharged-suspect, and the R.C. 149.43(A)(1)(o) other-law[1] provisions. *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 667 N.E.2d 974. We concluded that although the records submitted under seal indicated that some person or persons purposely intercepted Nix and Master's cordless telephone conversations, the records did not

---

1. This exemption is now R.C. 149.43(A)(1)(p).

establish any police cover-up or fictitious investigation, as relators had alleged. *Master*, 76 Ohio St.3d at 342-344, 667 N.E.2d at 975-977.

{¶ 6} In 1994 and 1995, relators and Master commenced two federal wiretapping cases involving similar allegations in federal district court. They subsequently filed an additional state case. Thus far, relators' claims have generally been found to be meritless. See, *e.g., Master v. Sword* (Nov. 9, 1995), Cuyahoga App. No. 68297, unreported, 1995 WL 662108; *Master v. Chalko* (June 5, 1997), Cuyahoga App. No. 70527, unreported, 1997 WL 298260; *Nix v. Chalko* (Feb. 19, 1998), Cuyahoga App. No. 72023, unreported, 1998 WL 72495; *Master v. Fed. Bur. of Investigation* (C.A.D.C.1997), 124 F.3d 1309.

{¶ 7} In 1995, Cleveland retained a private law firm to represent then city councilman Patrick O'Malley in the wiretapping litigation. The city thereafter defended O'Malley.

{¶ 8} According to relators, respondents, Cleveland and its mayor, Michael White, directed city attorneys to conceal O'Malley's and Sazima's involvement in the wiretapping, and the city attorneys knew of the cover-up and induced witnesses to falsify their testimony about the wiretapping.

{¶ 9} In August 1997, relators requested to inspect the following records: (1) any records relating to the wiretapping of telephone conversations of Nix and Master, including all correspondence between any city employee and any other person pertaining to the wiretapping; (2) any files of the Cleveland Law Department pertaining to the wiretapping, including all correspondence between the law department and any other attorney concerning the wiretapping; (3) any correspondence between the Cleveland Law Department and the Cuyahoga County Prosecutor's Office, FBI, and United States Attorney's Office pertaining to the wiretapping; (4) any tape recordings or transcripts of telephone communications of Nix and Master during the period of the wiretapping; (5) any correspondence between any Cleveland employee and the Attorney General, Ohio Organized Crime

Investigation Commission, and the state pertaining to the wiretapping; (6) all records relating to the city's decision to provide a defense to O'Malley in the wiretapping litigation; and (7) all billings received and checks issued by Cleveland to the private law firm for services rendered in the wiretapping litigation on behalf of O'Malley. Relators also requested attorney fees.

{¶ 10} After respondents refused to provide access to the requested records, relators filed this action for a writ of mandamus under R.C. 149.43, Ohio's Public Records Act. Master is now deceased, and Nix brought this mandamus action both individually and as executor of Master's estate. Respondents filed an answer in which they claimed that the requested records were exempt from disclosure under the attorney-client privilege and the trial-preparation exemption.

{¶ 11} We issued an alternative writ, and the parties submitted evidence and briefs. From the evidence submitted, the only records in the city's custody that are responsive to relators' requests are (1) the police investigative file previously at issue in *Master*, 76 Ohio St.3d 340, 667 N.E.2d 974, (2) correspondence and filings in the wiretapping litigation, which relators already have, (3) requests to the Cleveland Law Department for representation by various Cleveland employees sued by relators, (4) status reports to the law department by the private law firm that represented O'Malley, (5) a fax transmittal from an attorney to a city police employee, (6) legal research conducted by the law department in connection with the wiretapping litigation, (7) law department attorney notes concerning the wiretapping cases, (8) law department attorney notes of a conversation with Sazima's private attorney concerning Sazima's request to the city for representation, and (9) bills and checks concerning the private law firm's representation of O'Malley in the wiretapping cases. The city mailed copies of the fax transmittal and bills and checks to relators.

{¶ 12} This cause is now before the court for a determination on the merits.

———————————

*Harold Pollock Co., L.P.A.*, and *Harold Pollock*, for relators.

*Sylvester Summers, Jr.*, Director of Law, and *Kathleen A. Martin*, Chief Trial Counsel, for respondents.

_____

***Per Curiam.***

{¶ 13} Relators assert that they are entitled to a writ of mandamus compelling respondents to provide access to the requested records under R.C. 149.43.

{¶ 14} Initially, to the extent that relators' requests encompass the PCIR Unit investigative file, their claim is barred by *res judicata*. *State ex rel. Russo v. Deters* (1997), 80 Ohio St.3d 152, 154, 684 N.E.2d 1237, 1238-1239. We previously held that this investigative file is exempt from disclosure under R.C. 149.43. *Master*, 76 Ohio St.3d 340, 667 N.E.2d 974.[2]

{¶ 15} In addition, relators' claims are moot insofar as they request access to records that they either already possessed at the time they filed this action, *e.g.*, correspondence and filings in the wiretapping cases, or that they now have as a result of respondents' subsequent transmission of certain records, *e.g.*, bills and checks related to the private law firm's representation of O'Malley. *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 401, 678 N.E.2d 557, 559-560.

{¶ 16} Further, relators are not entitled to access to records that do not exist. R.C. 149.43 does not require that a public office create new documents to meet a demand for records. *State ex rel. Fant v. Mengel* (1993), 62 Ohio St.3d 197, 198, 580 N.E.2d 1085, 1086.

_____

2. Despite the breadth of relators' requests, they state in their merit brief that they "seek to obtain City documents different from those which were sought in *Master*."

**{¶ 17}** Having held that relators are not entitled to a writ of mandamus to compel access to most of the requested records, we now examine relators' entitlement to the remaining records, which respondents claim are exempt from disclosure based on attorney-client privilege and the R.C. 149.43(A)(4) trial-preparation exemption. Relators contend that respondents waived these exemptions by not properly raising them.

**{¶ 18}** Respondents, however, did not waive these exemptions. Exemptions are usually fully applicable absent evidence that the public office having custody of the records disclosed the records to the public. *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 265, 685 N.E.2d 1223, 1227. R.C. 149.43 exemptions are not affirmative defenses that must be raised in an answer to avoid waiver. *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 33-34, 661 N.E.2d 187, 189-190. Respondents did not disclose the remaining records to the public, and even though they were not required to do so, they raise the claimed exemptions in their answer. Contrary to relators' assertion, respondents were not required to submit a "privilege log" in order to preserve their claimed exemptions. Cf. *Guy v. United Healthcare Corp.* (S.D.Ohio 1993), 154 F.R.D. 172.

**{¶ 19}** The attorney-client privilege, which respondents claim applies, exempts some of the remaining requested records. R.C. 149.43(A)(1)(p) defines "public record" as "any record that is kept by any public office * * * except * * * [r]ecords the release of which is prohibited by state or federal law." The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of these records. *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision* (1998), 81 Ohio St.3d 58, 62-63, 689 N.E.2d 32, 36; *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 249, 643 N.E.2d 126, 130. The attorney notes of conversations between Cleveland Law Department attorneys and

city employees named in relators' wiretapping litigation are thus privileged, as are those employees' requests to the law department for representation. "Where a person approaches an attorney with the view of retaining his services to act on the former's behalf, an attorney-client relationship is created, and communications made to such attorney during the preliminary conferences prior to the actual acceptance or rejection by the attorney of the employment are privileged communications." *Taylor v. Sheldon* (1961), 172 Ohio St. 118, 15 O.O.2d 206, 173 N.E.2d 892, paragraph one of the syllabus; *David v. Schwarzwald, Robiner, Wolf & Rock Co., L.P.A.* (1992), 79 Ohio App.3d 786, 798, 607 N.E.2d 1173, 1180.

{¶ 20} Nevertheless, relators claim that the attorney-client privilege does not preclude disclosure of any of the requested records because they fit under the crime-fraud exception to the privilege. A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud. *United States v. Collis* (C.A.6, 1997), 128 F.3d 313, 321; *State v. Bissantz* (1982), 3 Ohio App.3d 108, 110, 3 OBR 123, 125, 444 N.E.2d 92, 95, quoting *State v. Mullins* (1971), 26 Ohio App.2d 13, 18, 55 O.O.2d 30, 32, 268 N.E.2d 603, 606 (" 'A privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society.' "). A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. *United States v. Jacobs* (C.A.2, 1997), 117 F.3d 82, 87. The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege. *Id.* at 88, quoting *United States v. White* (C.A.D.C.1989), 887 F.2d 267, 271.

{¶ 21} Relators failed to introduce sufficient, credible evidence to overcome the attorney-client privilege based on the crime-fraud exception. An *in*

*camera* inspection is unnecessary. See *Jacobs*, 117 F.3d at 87 ("Once there is a showing of a factual basis, the decision whether to engage in an *in camera* review of the evidence lies in the discretion of the * * * court."). Relators' evidence consists mostly of affidavits replete with allegations based on belief and speculation rather than on personal knowledge. Affidavits filed in original actions in this court should be based on personal knowledge, setting forth facts admissible in evidence, and showing affirmatively that the affiant is competent to testify to all matters stated therein. See S.Ct.Prac.R. X(7); *State ex rel. Alben v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 133, 135, 666 N.E.2d 1119, 1123; cf. Civ.R. 56(E); Evid.R. 602; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150, 155. For example, one piece of evidence that relators place substantial reliance on is the statement from an unknown source that O'Malley accomplished the wiretapping by using his friend to install the equipment. This is inadmissible hearsay. See, *e.g.*, *State ex rel. Rogers v. Taft* (1992), 64 Ohio St.3d 193, 197, 594 N.E.2d 576, 579. The rest of relators' evidence, including arguable inconsistencies between certain witnesses' testimony in various wiretapping cases, also fails to establish a factual basis for relators' claims of crime or fraud.

{¶ 22} The remainder of the requested records are exempt from disclosure as trial-preparation records. " 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." R.C. 149.43(A)(4); *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 431-432, 639 N.E.2d 83, 92. The remaining records, *i.e.*, attorney notes of trial proceedings, status reports concerning wiretapping cases, and legal research conducted by the law department, were specifically compiled in reasonable

anticipation of, or in defense of, the numerous civil actions brought by relators against Cleveland and various Cleveland employees.

{¶ 23} Based on the foregoing, relators are not entitled to the requested extraordinary relief in mandamus. Relators are also not entitled to an award of attorney fees because their records requests were largely meritless. See, *e.g.*, *State ex rel. Logan Daily News v. Jones* (1997), 78 Ohio St.3d 322, 324, 677 N.E.2d 1195, 1197; *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 519, 664 N.E.2d 527, 530. Accordingly, we deny the writ.

*Writ denied.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

_____