**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Dayton Bar Assn. v. Daly*, **Slip Opinion No. 2025-Ohio-1624.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1624

DAYTON BAR ASSOCIATION *v*. DALY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Daly*, Slip Opinion No. 2025-Ohio-1624.]**

*Attorneys—Misconduct—Attorney violated Prof.Cond.R. 1.6(a) by twice revealing confidential client information to a police officer with knowledge that doing so could cause his former client serious legal harm—Eighteen-month suspension, stayed on conditions.*

(No. 2024-1399—Submitted January 7, 2025—Decided May 8, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-005.

_____

The per curiam opinion below was joined by DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by FISCHER, J. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, William Thomas Daly, of Port St. Lucie, Florida, Attorney Registration No. 0069300, was admitted to the practice of law in Ohio in 1998.[1]

{¶ 2} In a January 2024 complaint, relator, Dayton Bar Association, charged Daly with 12 violations of the Rules of Professional Conduct arising from his representation of a single client. In July 2024, the parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors. In those stipulations, Daly admitted that his conduct violated Prof.Cond.R. 1.6 (prohibiting a lawyer from revealing confidential client information without the client's informed consent). The parties jointly requested the dismissal of all other rule violations alleged in relator's complaint and agreed to withdraw all pending motions and objections. They further agreed that the appropriate sanction for Daly's misconduct is a conditionally stayed 18-month suspension.

{¶ 3} Daly was the only witness to testify at the hearing before a three-member panel of the Board of Professional Conduct. After the hearing and consistent with the parties' stipulations, the panel unanimously dismissed 11 of the 12 alleged rule violations. The panel later issued a report finding by clear and convincing evidence that Daly had violated Prof.Cond.R. 1.6(a) and recommending that a conditionally stayed 18-month suspension be imposed for that misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 4} No objections have been filed. However, Daly filed motions "to restrict public access to the dismissed ethics complaint counts" and "to adopt the current and standing prior court orders sealing those documents." He subsequently

---

1. Daly's state bar admissions also include New York and North Carolina.

filed what purports to be an affidavit in support of those motions. Relator filed a motion to strike that affidavit, and Daly responded to that motion.

{¶ 5} After reviewing the record and our precedent, we adopt the board's findings of misconduct and recommended sanction. Relator's motion to strike Daly's affidavit is granted, and Daly's motions to restrict public access and to adopt the sealing orders of other courts are summarily denied.

## MISCONDUCT

{¶ 6} Daly began representing S.H. in April 2016, after she was indicted on a burglary charge in the Montgomery County Common Pleas Court. At that time, S.H. was a single mother in her early twenties who was having financial difficulties and battling drug addiction. Under a plea deal negotiated by Daly, S.H. pleaded guilty to a reduced burglary charge and was sentenced to community control in July 2016.

{¶ 7} In August 2018, the trial court issued a notice for a community-control-sanction-revocation hearing in S.H.'s criminal case based in part on her failure to abstain from using illegal drugs. Daly represented S.H. at the hearing. In September 2018, S.H. was reinstated to community control and assigned to the trial court's Women's Therapeutic Docket, a court program designed to closely monitor and aid women in need of intensive therapeutic services for drug addiction and mental-health issues.

{¶ 8} In addition to the criminal case, Daly represented S.H. in a child-custody matter in the Montgomery County Juvenile Court. In August 2018, he filed a motion on S.H.'s behalf seeking sole custody of her minor child, child support, a protective order against the child's father, and supervised parenting time for the father. Daly also defended S.H. against the father's claim for full custody, in which the father alleged that S.H. was abusing drugs and was unfit to care for the child.

{¶ 9} During his representation of S.H., Daly came to believe that S.H. had stolen a necklace from his car. He tried, without success, to pressure her into

returning the necklace. On October 31, 2018, S.H. sought and obtained an ex parte civil protection order against Daly. Since that time, Daly has disputed the validity of the facts alleged by S.H. in support of that order and also maintained that the facts alleged by S.H. did not warrant the issuance of a civil protection order against him.

{¶ 10} On November 1, 2018, Daly filed a motion to withdraw from representing S.H. in her custody case. The next day, he met twice with Officer Steven Perfetti of the Riverside Police Department, seeking assistance in recovering the missing necklace.

{¶ 11} During his first meeting with Officer Perfetti, Daly acknowledged that S.H. had obtained a civil protection order against him. Daly told the officer that S.H. was homeless, but he identified the house where S.H. was staying with a person who was actively and illegally dealing "pills and weed." He claimed that S.H. had admitted to him that she was having sex daily with that drug dealer so that she would have a place to stay. Daly also told the officer that S.H. was engaging in prostitution out of that house and that she was using heroin, marijuana, and "roxys" and other pills. Daly gave the officer two phone numbers for S.H., explaining that one of them was the number the officer would call if he wanted "weed, pills, Vicodin, 'roxys,' or Percocets." He asked Officer Perfetti to contact S.H. quickly because he was worried that she would get high later and would not respond.

{¶ 12} During his second meeting with Officer Perfetti, Daly told the officer that S.H. was driving a vehicle that had tags registered to another person, and he explained that that was how S.H. got away with driving without a license. Daly admitted at his disciplinary hearing that he had learned the facts he related to Officer Perfetti solely from his confidential attorney-client communications with S.H.

{¶ 13} Prof.Cond.R. 1.6(a) prohibits a lawyer from "reveal[ing] information relating to the representation of a client, including information

protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by division (b) or required by division (d)" of the rule.

{¶ 14} However, Prof.Cond.R. 1.6(b) *permits* a lawyer to "reveal information relat[ed] to the representation of a client, including information protected by the attorney-client privilege . . . , to the extent the lawyer reasonably believes disclosure is necessary" to achieve certain enumerated objectives. Among those objectives are:

- preventing death, substantial bodily harm, or the commission of a crime;
- mitigating the damage to the financial interests or property of others when the client has used the lawyer's services to further an illegal or fraudulent act;
- securing legal advice about the lawyer's compliance with the professional-conduct rules;
- permitting the lawyer to establish a claim or defense in controversies between the lawyer and the client or to defend himself in civil or criminal matters based on conduct involving the client;
- permitting the lawyer to respond to allegations in any proceeding, including disciplinary proceedings, regarding the lawyer's representation of the client;
- permitting the client to comply with other law or a court order; and
- detecting and resolving conflicts of interest in the event of changes in the lawyer's employment or firm composition.

*See* Prof.Cond.R. 1.6(b).

{¶ 15} In contrast, Prof.Cond.R. 1.6(d) *requires* a lawyer to reveal information related to the representation of a client to the extent the lawyer reasonably believes the disclosure is necessary to comply with Prof.Cond.R. 3.3

(regarding candor toward the tribunal) or Prof.Cond.R. 4.1 (regarding the truthfulness of a lawyer's statements to others).

{¶ 16} The parties stipulated that the information Daly disclosed to Officer Perfetti was confidential client information that he knew from representing S.H. and that no exception set forth in Prof.Cond.R. 1.6 either permitted or required Daly to disclose it. In addition, the parties acknowledged that Daly's disclosure of S.H.'s confidential client information could have resulted in serious consequences for S.H., including the potential for new criminal charges, revocation of the community-control sanction imposed under the plea deal in her criminal case, and adverse rulings in her custody case.

{¶ 17} On these facts, the board found by clear and convincing evidence that Daly had violated Prof.Cond.R. 1.6(a). We adopt the board's finding of misconduct.

## SANCTION

{¶ 18} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 19} The parties stipulated and the board found that four aggravating factors are present in this case. First, Daly acted with a selfish motive by disclosing S.H.'s confidential client information in retaliation for her allegedly taking a necklace from him and obtaining an ex parte civil protection order against him. *See* Gov.Bar R. V(13)(B)(2). Daly also engaged in a pattern of misconduct and committed multiple offenses by disclosing S.H.'s confidential client information in two separate meetings with Officer Perfetti. *See* Gov.Bar R. V(13)(B)(3) and (4). And finally, Daly initially denied his misconduct and was generally uncooperative in the disciplinary process. *See* Gov.Bar R. V(13)(B)(5). Although the board found that the stipulated facts and evidence demonstrate that S.H. was clearly a vulnerable

client, it concluded that Daly's disclosures of S.H.'s confidential client information ultimately had no effect on her criminal or custody cases.

{¶ 20} As for mitigation, the parties stipulated and the board found that Daly has no prior discipline and that he eventually cooperated in the disciplinary proceedings and admitted that his conduct violated Prof.Cond.R. 1.6(a).  *See* Gov.Bar R. V(13)(C)(1) and (3).

{¶ 21} The parties stipulated that a conditionally stayed 18-month suspension is the appropriate sanction for Daly's misconduct.  But in his closing argument at the disciplinary hearing, Daly withdrew his agreement to that sanction and argued in favor of a conditionally stayed 12-month suspension.

{¶ 22} In support of its recommended sanction, relator advanced two cases that involve Prof.Cond.R. 1.6(a) violations: *Cleveland Metro. Bar Assn. v. Heben*, 2017-Ohio-6965, and *Disciplinary Counsel v. Holmes and Kerr*, 2018-Ohio-4308.

{¶ 23} In *Heben*, an attorney revealed a client's confidential information in an affidavit submitted with a publicly filed motion to withdraw from the representation; he did so in apparent retaliation for the client's alleged failure to pay his legal fees, thereby committing a single violation of Prof.Cond.R. 1.6(a). The judge presiding over the client's case struck Heben's affidavit from the record because his disclosures were inappropriate and unnecessary for purposes of seeking withdrawal.  Aggravating factors consisted of Heben's selfish motive and initial failure to acknowledge the wrongful nature of his conduct.  *Heben* at ¶ 14.  In mitigation, Heben had no prior disciplinary record and made full and free disclosures to the board and exhibited a cooperative attitude toward the disciplinary proceedings.  *Id*. at 16.  He also submitted numerous letters from judges, attorneys, and laypersons attesting to his good character and reputation, as well as his community and charitable services.  *Id.*

{¶ 24} Distinguishing the facts of *Heben* from those of *Akron Bar Assn. v. Holder*, 2004-Ohio-2835—in which we imposed a two-year suspension with 18

months conditionally stayed on an attorney who disclosed client confidences or secrets without authorization and committed other misconduct, including groundlessly suing his client for fraud, violating conflict-of-interest rules, and engaging in dishonest conduct—we concluded that a fully stayed one-year suspension was the appropriate sanction for Heben's misconduct. *Heben* at ¶ 18-19, 23.

{¶ 25} In *Holmes and Kerr*, two attorneys who represented public-school districts while working in separate law practices commenced a personal relationship. In more than a dozen emails exchanged over a period of nearly two years, they revealed confidential client information to each other. Moreover, the misconduct continued even after the attorneys' respective law firms discovered their actions and after disciplinary counsel commenced his investigation. But in contrast to the attorney in *Heben*, the attorneys in *Holmes and Kerr* did not disclose damaging client information in a publicly filed document. In addition to finding that Holmes and Kerr's conduct violated Prof.Cond.R. 1.6(a) as Daly has in this case, we also found that their conduct violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Holmes and Kerr*, 2018-Ohio-4308, at ¶ 6.

{¶ 26} The sole aggravating factor in *Holmes and Kerr* was that the attorneys had engaged in a pattern of misconduct. *Id.* Mitigating factors consisted of their clean disciplinary records, cooperative attitudes toward the disciplinary proceedings, and evidence of their good character. *Id.* On those facts, we adopted the parties' consent-to-discipline agreements and imposed conditionally stayed six-month suspensions on both Holmes and Kerr. *Id.* at ¶ 10-11.

{¶ 27} In this case, Daly represented a young, troubled, single mother who was struggling with drug addiction and the possibility that she could lose custody of her child. S.H. needed to be able to freely discuss her problems with her attorney and be confident that he would use that information to advise her in her legal

8

matters, rather than use the information against her. On two separate occasions, however, Daly deliberately disclosed S.H.'s confidential client information to a police officer, and he did so with the knowledge that his disclosures could cause S.H. serious legal harm. In his disciplinary-hearing testimony, Daly explained that he made the disclosures to Officer Perfetti because he had been trying for ten days to recover a necklace from S.H. that he believed she had stolen from him and because he felt "stymied" when she obtained an ex parte civil protection order against him based on what he believed to be false evidence. He described his state of mind as "[f]rustrated; angry; upset; humiliated; [and] disappointed." He acknowledged, however, that his feelings of frustration were not an excuse for his misconduct.

{¶ 28} In his closing argument at the disciplinary hearing, Daly sought to distinguish his misconduct in this case from the misconduct that was at issue in *Heben*, noting that Heben had attempted to justify his disclosure of confidential client information and never really took responsibility for his misconduct. Daly argued that he should be credited for offering no such excuses for his actions and for eventually acknowledging that what he did was wrong. Asserting that Heben's conduct was worse than his own, Daly argued that he should receive a sanction no greater than the fully stayed 12-month suspension this court imposed in *Heben*.

{¶ 29} The board noted, however, that in his closing argument, Daly had overlooked the fact that Heben had presented significant evidence of his good character and reputation, while Daly offered none. Moreover, the board found that the confidential client information Daly had divulged to Officer Perfetti was "intentionally degrading and belittling" to S.H. and that its disclosure could have caused S.H. to be incarcerated or to lose custody of her child. The board rejected Daly's argument for a lesser sanction and found that his misconduct warranted a more serious sanction than that imposed in *Heben*. The board therefore recommends that we suspend Daly from the practice of law for 18 months with the

entire suspension stayed on the conditions that he commit no further misconduct and that he be assessed the costs of these disciplinary proceedings.

{¶ 30} "A fundamental principle in the attorney-client relationship is that the attorney shall maintain the confidentiality of any information learned during the attorney-client relationship." *Kala v. Aluminum Smelting & Refining Co., Inc.*, 1998-Ohio-439, ¶ 12. The purpose of this confidentiality is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

{¶ 31} In this case, Daly violated that fundamental principal of the attorney-client relationship by disclosing to a police officer confidential information about S.H. that he had learned while representing her. He did so in a selfish effort to recover property that S.H. had allegedly stolen from him. Daly's unauthorized disclosure of that information posed a significant threat to S.H.'s liberty and her ability to maintain custody of her child—the two interests that Daly was hired and duty bound to protect. Daly made those damaging disclosures in two separate meetings with the officer, and he initially denied his misconduct and was generally uncooperative throughout most of the disciplinary process. And although he practiced law for approximately 20 years without discipline before engaging in the above-described misconduct, in contrast to the attorney in *Heben*, Daly has not offered any evidence to otherwise establish his good character and reputation.

{¶ 32} Based on our review of the record, we agree with the board's conclusion that a conditionally stayed 18-month suspension is the appropriate sanction for Daly's misconduct.

## MOTIONS

{¶ 33} On January 30, 2025, Daly filed motions "to restrict public access to the dismissed ethics complaint counts" and "to adopt the current and standing prior court orders sealing those documents." Nearly three weeks later, on February 18,

10

Daly filed an affidavit in support of those motions. And on February 21, relator filed a motion to strike Daly's affidavit. Daly responded to that motion three days later. We grant relator's motion to strike Daly's affidavit. Daly's motions, however, are summarily denied.

## CONCLUSION

{¶ 34} Accordingly, William Thomas Daly is suspended from the practice of law in Ohio for 18 months, with the entire suspension stayed on the conditions that he commit no further misconduct and that he pay the costs of these proceedings. If Daly fails to comply with either condition of the stay, the stay will be revoked and he will serve the entire 18-month suspension. Relator's February 21, 2025 motion to strike is granted, and Daly's January 30, 2025 motions are summarily denied.

Judgment accordingly.

_____

**KENNEDY, C.J., joined by FISCHER, J., concurring in part and dissenting in part.**

{¶ 35} This case is about respondent William Thomas Daly's vindictive breach of the attorney-client privilege. I agree with the majority that Daly's conduct violated Prof.Cond.R. 1.6(a) (prohibiting a lawyer from revealing confidential client information without the client's informed consent). I also agree with the majority's resolution of Daly's motions. But I disagree with the majority's decision to adopt the Board of Professional Conduct's recommendation to suspend Daly from the practice of law for 18 months, with the entire suspension stayed on the condition that he commit no further misconduct. Instead, our precedent supports indefinitely suspending Daly from the practice of law.

{¶ 36} In the past, this court has held that "a lawyer's duty to provide undivided loyalty to a client is paramount." *Columbus Bar Assn. v. Ross*, 2006-Ohio-5, ¶ 29. That undivided loyalty includes maintaining the confidentiality of

11

any information that the attorney learns during the attorney-client relationship. *See Kala v. Aluminum Smelting & Refining Co., Inc.*, 1998-Ohio-439, ¶ 12.

{¶ 37} Accordingly, because our caselaw supports indefinitely suspending Daly from the practice of law, I dissent in part.

**Law and Analysis**

{¶ 38} "Each disciplinary case involves unique facts and circumstances." Gov.Bar R. V(13)(A). When we review cases involving similar attorney misconduct and aggravating and mitigating factors, we apply our precedent to ensure a fair and equitable disciplinary system. *Disciplinary Counsel v. Nowicki*, 2023-Ohio-3079, ¶ 35 (Kennedy, C.J., concurring in part and dissenting in part).

{¶ 39} "The primary purpose of attorney discipline 'is not to punish the offender, but to protect the public.'" *Id.* at ¶ 82 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 53. "'Protecting the public . . . is not strictly limited to protecting clients from a specific attorney's potential misconduct. Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated.'" (Ellipses in original.) *Id.* at ¶ 83 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. Schuman*, 2017-Ohio-8800, ¶ 17.

*The Attorney-Client Privilege*

{¶ 40} The attorney-client privilege forbids an attorney from disclosing to anyone knowledge "relat[ing] to the services for which he was employed, whether it is gained from words or merely by observations." *Taylor v. Sheldon*, 172 Ohio St. 118 (1961), paragraph four of the syllabus. It is "is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

{¶ 41} We have acknowledged that the privilege "is very ancient, very sacred, and universally admitted and approved." *Duttenhofer v. State*, 34 Ohio St. 91, 92 (1877). At the time, "the bench and bar never complained of it, always enforced it, and jealously guarded it." *Id.*

{¶ 42} The attorney-client privilege is necessary "to permit complete freedom of disclosure by a client to his attorney without fear that any facts so disclosed will be used against him." *Taylor* at 121. Essentially, attorneys must keep client communications "'as secret and inviolable as if the facts had remained in the knowledge of the client alone.'" *Foley v. Poschke*, 137 Ohio St. 593, 595 (1941), quoting *Dickerson v. Dickerson*, 322 Ill. 492, 500 (1926).

*Caselaw Supports Indefinitely Suspending Daly*

{¶ 43} In each of the following cases, this court indefinitely suspended from the practice of law attorneys who violated the attorney-client privilege.

{¶ 44} In *Stark Cty. Bar Assn. v. Osborne*, Osborne entered various real-estate transactions with a physically and mentally incompetent client. 1 Ohio St.3d 140 (1982). The board found that the client lost money in each transaction and that Osborne betrayed his client's confidences by representing a third party with interests adverse to the client's. The board also found that Osborne had entered a business relationship with a different client in which his personal interests would affect his judgment, that Osborne used the client's confidences to his own advantage, and that Osborne's conduct was prejudicial to the administration of justice.

{¶ 45} The court did not explicitly state what Osborne revealed, but it is implied that if an attorney enters a transaction with a client and the client loses money, the attorney used the client's confidences to the client's detriment. *Findlay/Hancock Cty. Bar Assn. v. Filkins*, 2000-Ohio-491, ¶ 56 (holding "that where an attorney represents himself and his client in a business deal, and the client loses money on the deal, a presumption arises that the attorney used client

confidences to his client's disadvantage"). Consequently, this court adopted the board's recommended sanction and indefinitely suspended Osborne. *Osborne* at 142-143.

{¶ 46} Next, in *Greater Cleveland Bar Assn. v. Watkins*, this court indefinitely suspended an attorney who revealed confidential client information and used that information to his advantage. 68 Ohio St.2d 11 (1981). In that case, Watkins's client disputed his legal fees and filed a complaint with the relator. During the relator's investigation, the client asked the relator to drop the complaint because Watkins had contacted the client's employer and threatened that if relator did not stop its investigation, he would report the client and the client's employer to the authorities for paying the client "somewhat under the table." *Id.* at 12.

{¶ 47} The client had shared with Watkins information about how his employer paid him, but the client had not authorized Watkins to release that information. This court adopted the board's findings and recommended sanction to indefinitely suspend Watkins from the practice of law. *Id.*

{¶ 48} Finally, in *Cleveland Bar Assn. v. Fox*, we indefinitely suspended an attorney for violating the attorney-client privilege when he used confidential client information to the client's disadvantage. 1996-Ohio-250. Fox represented a driver and passenger who had been in a car accident. The driver lost his claim in arbitration and appealed. Fox then withdrew as the driver's counsel and cross-claimed against him on the passenger's behalf. The board found that Fox, who did not respond to the allegations against him, had failed to preserve a client's secrets by using the driver's confidential client information against him in the cross-claim. The board also found that Fox accepted employment in which his personal interests would impede his judgment and represented a third party with interests adverse to his client's. We adopted the board's recommended sanction and indefinitely suspended Fox from the practice of law. *Id.* at ¶ 6.

**{¶ 49}** Daly's violation of the attorney-client privilege is similar to the violations in *Osborne*, *Watkins*, and *Fox*. S.H. was a vulnerable client—a single mother battling a drug addiction and engaged in a child-custody dispute. Daly vindictively attempted to use S.H.'s confidential client information—that she lived with a drug dealer, engaged in prostitution, and drove without a license—to get her in criminal trouble. His use of S.H.'s confidential client information did not come close to falling within an exception to the disclosure of such information. *See State ex rel. Nix v. Cleveland*, 1998-Ohio-290, ¶ 20 (holding that "[a] communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime," but "the mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege"). Daly reported her to the police because he believed that S.H. stole a necklace from his car—with no explanation as to why she was there, what she was doing there, or how she got into his car in the first place.

**{¶ 50}** The attorneys in *Fox* and *Osborne* used confidential client information to financially hurt their clients and benefit themselves, and this court indefinitely suspended them. *Fox* at ¶ 2, 6; *Osborne*, 1 Ohio St.3d at 142-143. And in *Watkins*, the attorney had merely threatened to use confidential client information against the client, and this court indefinitely suspended him. *Watkins*, 68 Ohio St.2d at 12. If Watkins's threat that he would use confidential client information to get his client and the client's employer in legal trouble warranted imposing an indefinite suspension, certainly Daly's going to the police and using S.H.'s confidential client information to try to get her in legal trouble does too.

**{¶ 51}** For these reasons, Daly's misconduct warrants an indefinite suspension from the practice of law.

*The Majority's Cases Are Distinguishable*

**{¶ 52}** To support Daly's sanction, the majority relies on three cases: *Cleveland Metro. Bar Assn. v. Heben*, 2017-Ohio-6965, *Akron Bar Assn. v. Holder*,

2004-Ohio-2835, and *Disciplinary Counsel v. Holmes and Kerr*, 2018-Ohio-4308. But the flagrancy of Daly's conduct exceeds the misconduct in each of those cases.

{¶ 53} In *Heben*, the board found that Heben violated Prof.Cond.R. 1.6(a). Heben represented a client in a divorce proceeding and withdrew as counsel by filing an affidavit stating his reasons for withdrawing. He "recounted communications he had had with [his client] about the scope of his representation and his compensation, accused [his client] of refusing to pay his agreed-upon fees 'without cause,' and disclosed legal advice that he had given [his client]." *Heben* at ¶ 5.

{¶ 54} At his disciplinary hearing, Heben claimed that he included that information because of a fee dispute with the client. As for aggravating factors, the board found that Heben had a selfish motive and that he did not acknowledge the wrongful nature of his conduct. *Id.* at ¶ 14. In mitigation, the board found that Heben had no disciplinary record, made full and free disclosure to the board, cooperated in the disciplinary process, and submitted letters from the bench and bar concerning his good character and reputation. *Id.* at ¶ 16. This court adopted the board's recommended sanction and suspended Heben from the practice of law for one year, with the entire year conditionally stayed. *Id.* at ¶ 22.

{¶ 55} The board found that Daly, like Heben, acted selfishly. But unlike the attorney in *Heben*, Daly's misconduct was vindictive. Heben had a colorable argument that he needed to include in his affidavit confidential client information to resolve a fee dispute. *See id.* at ¶ 14-15; *see also Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, paragraph one of the syllabus (an attorney may testify about confidential attorney-client communications to establish a claim for legal fees). Daly, however, had no reason to disclose S.H.'s confidential client information to the police. He certainly had no reason to talk to the police twice, and Daly has not shown any connection between his accusation that S.H. stole a necklace from him and him telling the police that S.H. used drugs,

worked as a prostitute, and drove without a license. Rather, revenge motivated him. Finally, Heben presented evidence of his good character, but Daly did not. *Heben* at ¶ 16.

{¶ 56} In *Holder*, this court suspended Holder from the practice of law for 24 months, with 18 months conditionally stayed. 2004-Ohio-2835 at ¶ 45. To warrant that sanction, Holder represented clients with diverging interests, disclosed to third parties a former client's criminal record, and sent a complaint concerning that same former client's unpaid legal fees to uninvolved third parties. At his disciplinary hearing, Holder argued that his client's criminal record and the fee dispute were public records, and therefore, he did not violate the attorney-client privilege.

{¶ 57} This court rejected that argument, holding that "an attorney is not free to disclose embarrassing or harmful features of a client's life just because they are documented in public records or the attorney learned of them in some other way." *Id.* at ¶ 39.

{¶ 58} To reach its recommended sanction, the board analyzed multiple aggravating and mitigating factors. As aggravating factors, the board found that Holder's misconduct harmed the client, that he lacked remorse, and that he acted selfishly. *Id.* at ¶ 33. In mitigation, the board found that Holder had no prior disciplinary record, he directed his misconduct toward only one client, and he cooperated in the disciplinary proceedings. *Id.* at ¶ 32.

{¶ 59} The egregiousness of Daly's misconduct exceeds Holder's. Although the attorneys in each case acted with a selfish motive and lacked remorse for their conduct, Holder released publicly available information while Daly released confidential client information. And unlike Holder, Daly did not initially cooperate in the disciplinary proceedings.

{¶ 60} Lastly, in *Holmes and Kerr*, the relator charged two attorneys who worked at different law firms with improperly disclosing to each other confidential

client information over email. Kerr sent Holmes communications from her clients in which they requested certain legal documents, and Holmes helped Kerr by providing her with copies of his own clients' documents that he prepared in similar cases. The board found that both attorneys violated Prof.Cond.R. 1.6(a) and 8.4(h) (prohibiting a lawyer from engaging in conduct adversely reflecting on the lawyer's fitness to practice law) multiple times but also that they had no prior discipline, cooperated with the disciplinary proceedings, and presented evidence of good character. *Holmes and Kerr*, 2018-Ohio-4308, at ¶ 6. In the end, we suspended both attorneys for six months, with the suspensions conditionally stayed. *Id.* at ¶ 11.

{¶ 61} Unlike Holmes and Kerr, Daly violated only one rule, and he violated that rule with respect to only one client, although he disclosed that client's confidences to the police twice. But Daly did not reveal S.H.'s confidences to help her—he told his client's secrets to the police in an effort to get her into trouble— he did not initially cooperate in the disciplinary proceedings, and he did not present positive-character evidence. Of course, the egregiousness of Daly's misconduct surpasses the misconduct that was at issue in *Holmes and Kerr* because Kerr at least acted to benefit her clients. Here, Daly acted to his client's detriment.

{¶ 62} At bottom, a comparison of this case's facts with those in *Heben*, *Holder*, and *Holmes and Kerr* demonstrates that the majority's reliance on those cases is misplaced. Consequently, Daly's sanction goes against this court's practice of indefinitely suspending attorneys who breach the attorney-client privilege.

### Conclusion

{¶ 63} The record does not justify departing from our precedent of indefinitely suspending attorneys for disclosing confidential information to the client's detriment. I am unaware of any other case this court has decided in which an attorney, motivated by revenge, revealed his client's secrets to the police.

**{¶ 64}** Therefore, I concur in part and dissent in part and would indefinitely suspend Daly from the practice of law.

———————————

Roderer Law Office, L.L.C., and Paul B. Roderer Jr., for relator.

William T. Daly, pro se.

———————————